458 A.2d 962

Rose KELLY, Appellant,

v.

Robert J. DORAN and Mary G. Doran, his wife and Charles Dorkey, Trading as Charles E. Dorkey, Jr., Realtor.

Superior Court of Pennsylvania.

Argued June 8, 1982.

Filed March 31, 1983.

A. Yes sir.
(Emphasis added)
(Tr. June 13, 1980, pp. 4, 5, 16–18)

Donald B. Pritchard, Jr., Norristown, for appellant.
Lawrence F. Flick, Norristown, for appellees.

Before CAVANAUGH, ROWLEY and WATKINS, JJ.

CAVANAUGH, Judge:

In this case the appellant, Rose Kelly, signed an agreement of sale dated June 4, 1978, under which she was to purchase a house located in Ardmore, Montgomery County, Pennsylvania, for the price of $52,000. Settlement was to be held on or before July 12, 1978. Unfortunately, the appellant was unable to obtain a mortgage and the sale was not completed. The sellers, the appellees herein, Mr. and Mrs. Robert J. Doran, refused to return the appellant's deposit of $5,200 and she commenced an action in assumpsit. A hearing was held before a board of arbitrators and the appellant was awarded $5,746. The assumpsit action was commenced not only against the appellees but also against their real estate agent, Charles E. Dorkey, Jr. The action against Mr. Dorkey was settled after payment of the deposit monies plus interest into court. Mr. and Mrs. Doran appealed to the court of common pleas from the award of arbitrators and the matter was heard before Stanziani, J. and a jury. Following the close of the appellant's case, the court below granted the appellees' motion for compulsory non-suit. The appellant's motions to take off the non-suit and for a new trial were denied and she has appealed to this Court.

The law with reference to the entry of a compulsory non-suit is clear. "In reviewing the entry of a compulsory non-suit, it is well established that the non-moving party is entitled to a favorable view of the evidence and all reasonable inferences arising therefrom. That party is to receive the beneficial resolution of any conflicts which may exist in the evidence and a non-suit should be awarded only in clear cases." *Brennan v. Reed, Smith, Shaw & McClay*, 304 Pa.Super. 399, 450 A.2d 740, 741, 742 (1982). When a compulsory non-suit is entered the lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement. *See West Mountain Poultry Company v. Gress*, 309 Pa.Super. 361, 455 A.2d 651 (1982). Reviewing the evidence in the light most favorable to the appellant the following facts develop. On June

4, 1978, the appellant, Rose Kelly, entered a written agreement of sale with Mr. and Mrs. Robert J. Doran, for the purchase of a house located in Lower Merion Township, Montgomery County, for the price of $52,000. The real estate agent for the appellees was Charles E. Dorkey, Jr. The agreement of sale contained a mortgage contingency clause under which the sale was subject to the appellant obtaining a mortgage in the amount of $46,800. The mortgage contingency clause stated, *inter alia:*

2. Should Buyer be unable to obtain a written commitment for a mortgage loan on the terms set forth above, Buyer shall advise Seller or his agent, hereafter referred to as Seller in writing by registered or certified mail (return receipt requested) on or before June 30, 1978 of such condition.

3. If Buyer fails to make application for such mortgage loan or to notify Seller of his inability to obtain a written commitment as herein set forth, or fails to execute any application for such mortgage loan at Seller's request, the condition and contingency provided for shall no longer prevail and this Agreement shall be and remain in full force and effect according to its terms in the same manner as if the condition and contingency were not a part hereof.

The agreement of sale provided for the return of the appellant's deposit money in the event a mortgage could not be obtained, subject to the condition in the agreement of sale set forth above.

The appellant made a timely application for a mortgage with the Commonwealth Federal Savings and Loan Association. During the week of June 26, 1978, Mr. Dorkey called the Commonwealth Federal to determine the status of the mortgage application. He was advised that some of the papers needed to complete the application had not been received. This caused him concern because the settlement date of July 12, 1978, was rapidly approaching and the mortgage was necessary to complete settlement. Mr. Dorkey testified that he was not concerned that the appellant's

mortgage would be rejected, but he was anxious that all the papers be submitted. In late June, 1978, Mr. Dorkey telephoned the appellant and told her not to worry and that everything had been taken care of. He told her, however, that the mortgage definitely wouldn't be through by the end of June but that "he had notified the sellers and they knew that she wouldn't have the mortgage by the end of June, but that they were still trying to have settlement ... by July 12, 1978." He also asked the appellant if she was interested in some drapes and a refrigerator that were in the house and she told him that she was not.

In early July Mr. Dorkey was still working on obtaining the mortgage from Commonwealth Federal Savings and Loan. He called the appellant on July 7, 1978, and told her that there was a "little problem" with the mortgage and most likely it wouldn't be through by July 12th, and that the appellant would be given a two week extension in which to hold settlement. During the week of July 11, 1978, Mr. Dorkey made at least two telephone calls to the Commonwealth Federal to see if the mortgage committee had approved the appellant's mortgage. On July 17, 1978 the Commonwealth Federal advised Mr. Dorkey that the Committee had rejected the mortgage. He notified the appellees that the mortgage application had been rejected and in a further attempt to save the sale he called the Mainline Federal Savings and Loan Association but was unable to obtain a mortgage.[1]

Between July 7, 1978 and July 17, 1978 appellant could not reach Mr. Dorkey to discuss the situation with him. On July 17, 1978, he telephoned her and told her that the mortgage application was turned down because of false information which she put on the mortgage application.

1. With respect to seeking a mortgage from Mainline Federal, Mr. Dorkey testified as follows:
   A. Right. It was important—it was important for all parties that the settlement take place, really. Mrs. Kelly needed a house and the Dorans needed to sell their house, and if there was some way that something could be salvaged out of it, it's to the best interests of all parties.

Appellant then called Mrs. Doran to request that her deposit be returned and she was told by Mrs. Doran that it would not because the appellant lied.[2]  On August 2, 1978 the appellant sent a certified letter to the appellees advising them that she could not obtain the mortgage.  When the appellees refused to return the deposit money the instant action was commenced.

With respect to the alleged misinformation on the mortgage application the appellant was able to explain the statements she made and ultimately her mortgage application was rejected for insufficient income.

There is no doubt that the appellant did not notify the appellees or their agent by registered or certified mail on or before June 30, 1978, that she could not obtain the mortgage.  The issue before the court below was whether there was a waiver of this requirement in the circumstances of this case where the sellers and their agent knew by June 30, 1978 that as of that date she had not obtained the mortgage and yet gave every indication that the settlement would still be held and that there was no real problem.  Further, appellees' agent gave the appellant a two week extension in which to hold settlement in order to give her additional time to obtain the mortgage.  As of June 30, 1978, there was obviously no desire on the part of the appellees' agent to have the appellant notify the appellees in writing that she could not obtain the mortgage.  All parties, including the

---

**2.**  Appellant testified that when she called Mrs. Doran, she asked her why the sellers would not return her deposit money.  Appellant's testimony was: "she said because you lied, and slammed the phone in my ear."

It was not until later that the appellees raised the issue of noncompliance with the mortgage contingency clause.  As stated in *Warner Company v. MacMullen,* 381 Pa. 22, 28, 112 A.2d 74, 77, 78 (1955):

It is a firmly established principle, founded on the doctrine of equitable estoppel, that a refusal to perform the obligations of a contract on the ground of a specific breach assigned as the reason for such refusal, constitutes a waiver of all other breaches then known to him;[1] where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his mind, to the detriment and disadvantage of the other party, and seek to justify his action by advancing some other reason.

appellant, the appellees and the appellees' real estate agent were most desirous of not having the sale fall through. The appellees' agent was still working towards obtaining the mortgage approval and even went to the Mainline Federal in an unsuccessful attempt to obtain a mortgage.

The appellant was not familiar with agreements of sale although certainly Mr. Dorkey, appellees' agent, was. Although all parties knew by June 30, 1978, that appellant could not obtain a mortgage by that date, the appellees' real estate agent called the appellant and told her that the appellees were still striving for a July 12th settlement. Appellant could reasonably assume that she was not being led into legal quicksand which would place her in the dilemma of (1) notifying the sellers by June 30, 1978 in writing and by certified mail that she had not obtained the mortgage which they already knew and thereby terminating the sale, or (2) going beyond the June 30, 1978 date in an attempt to obtain the mortgage and complete settlement by July 12th, and thereby losing her deposit of $5,400 if she could not obtain the mortgage. Of course, this choice was not presented to the appellant and it was for the jury to determine in the circumstances whether the appellees by their conduct and that of their real estate agent waived the requirement of written notice by June 30, 1978.

The court below in its opinion correctly stated the law that judgment of non-suit may be granted only in clear cases. The court went on to state that "false information submitted on the mortgage application led to a failure to obtain a mortgage by June 30" and that therefore the appellant should have given written notice by June 30, 1978. However, the appellant explained the statements that she made in the mortgage application and it was for the jury to determine if strict compliance with the terms of the contract had been waived. There were factual questions raised and "a compulsory non-suit may be entered only in a clear case where the facts and circumstances lead unerringly to but one conclusion." *Paul v. Hess Brothers, Inc.*, 226 Pa.Super. 92, 94–95, 312 A.2d 65, 66 (1973). In this case we

cannot say without any doubt that there is no alternative except the literal enforcement of the harsh forfeiture provisions set forth in the agreement of sale.

Order reversed and compulsory non-suit removed. A new trial is granted to the appellant.