610 A.2d 1036

**Robert D. COBER, Jr.**

v.

**Johnny J. CORLE, t/a Corle Construction, Central Glass Insulations, Inc., and Sharon Metal Products, Inc., Appeal of Johnny J. CORLE, t/a Corle Construction, Appellants.**

Superior Court of Pennsylvania.

Submitted Sept. 9, 1991.

Filed June 4, 1992.

Richard T. Williams, Sr., Johnstown, for appellants.

John J. DiRienzo, Jr., Somerset, for appellee.

Before ROWLEY, President Judge, and CAVANAUGH and BECK, JJ.

BECK, Judge:

This is an appeal from a judgment entered in favor of appellee, Robert D. Cober, Jr., and against appellant, Johnny J. Corle, t/a Corle Construction, after a trial without a jury. Appellant raises two issues on appeal. First, he asserts the trial court erred as a matter of law in applying the Uniform Commercial Code warranty provisions to this case. Second, he asserts that the trial court applied an improper measure of damages.

We find no error in the trial court's disposition of this matter and affirm.

Appellee Robert Cober is engaged in the business of engine rebuilding. In early 1982, he determined that he needed a new building in which to conduct his business. On June 2, 1982, Cober entered into a written agreement with appellant Johnny Corle, a distributor and erector of pre-designed and pre-engineered steel buildings manufactured by Sharon Metal Buildings, pursuant to which Corle agreed to sell and erect a Sharon Metal steel building for Cober. The agreement was entitled "Purchase Agreement". On page one, the Agreement listed the items to be sold to Cober, including the steel building, doors, windows, concrete floor and insulation for the walls and roof. It also listed "Building Construction." There was no itemization of costs, the total price simply being indicated to be $55,500.

The second page of the Agreement provided for an initial down payment of $5,500, a second payment of $35,000 and a final payment of $15,000. The third page of the Agreement is headed "Offer to Purchase" and is a more detailed listing of the various elements of the building and accessories to it which were to be sold under the Agreement. It also provided that delivery of the items indicated was dependent on availability and that the costs thereof might increase prior to delivery.

Finally, the last page of the Agreement contained a variety of general terms and conditions. Throughout this part of the document, the parties are referred to as "Buyer" and "Seller". The terms set forth relate to allocation of the risk of loss to the goods during transit, handling of claims for shortages, defects in the materials, transfer of title thereto, delay in performance by Seller, acceptance of delivery by Buyer, cancellation of the order either prior to or during fabrication and manner of payment.

Erection of the building was commenced in September 1982 and took only about four to six weeks to complete. Corle erected the building and installed the insulation in the roof and side walls. He did not participate in any other aspect of the preparation of the building for actual use. Cober independently arranged for installation of the heating, plumbing and electrical systems.

On November 20, 1987, Cober filed a complaint against Corle in which he alleged that commencing in the winter of 1982–83 and in each succeeding winter, excess condensation had formed on the ceiling and interiors of the walls of the building, to the extent that the water was dripping down into the work area.[1] The complaint contained four counts, asserting breach of contract and breaches of express warranty, warranty of merchantability and warranty of fitness for a particular purpose. As to the latter warranty, Cober

---

**1.** The complaint also named Sharon Metal Products, manufacturer of the building, and Central Glass Insulations, Inc., manufacturer of the ceiling insulation, as defendants. Cober later discontinued his action as to these parties, with the consent of Corle, and they are not parties to this appeal.

alleged that he had communicated to Corle prior to signing the Agreement that Cober wanted effective insulation to minimize heating costs and was particularly concerned with avoiding a problem with condensation in the building. He further alleged that he had relied on Corle's expertise in providing a building and insulation package that would be free of such problems.

Trial without a jury resulted in a verdict for Cober. The court found a breach of all of the warranties pleaded in the complaint. The court awarded damages in the amount of $38,581.35, the amount sought by Cober to repair the damage to the building by removing the roof and installing new insulation with a vapor barrier to prevent further seepage of moisture into the insulation and to remedy all other condensation problems in the building. Post-trial motions filed by Corle were denied and judgment for Cober was thereupon entered in the amount of the verdict. This timely appeal followed.

Appellant Corle argues that the trial court erred in refusing to grant judgment n.o.v. Our Supreme Court has very recently provided us with the following reiteration of the standards by which our review of a motion for judgment n.o.v. must be guided:

> In reviewing a motion for judgment n.o.v., "the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Broxie v. Household Finance Company,* 472 Pa. 373, 380, 372 A.2d 741, 745 (1977). *See also, Metts v. Griglak,* 438 Pa. 392, 264 A.2d 684 (1970) and *Gonzalez v. United States Steel Corp.,* 484 Pa. 277, 398 A.2d 1378 (1979). Moreover, [a] judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. *See Atkins v. Urban Redevelopment Authority of Pittsburgh,* 489 Pa. 344,

414 A.2d 100 (1980) and *Steward v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970).  ....

There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, *Tremaine v. H.K. Mulford Co.*, 317 Pa. 97, 176 A. 212 (1935), and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant, *Cummings v. Nazareth Borough*, 427 Pa. 14, 233 A.2d 874 (1967).  With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Moure v. Raeuchle*, 529 Pa. 394, 402–403, 604 A.2d 1003, 1007 (1992).

▮▮▮▮  Here, appellant asserts two errors of law which he argues require a verdict in his favor.  First, he argues that there were no warranties extended as to this building or its insulation except those contained in the Agreement, which did not include any warranty of fitness for a particular purpose or of merchantability.[2]  Corle contends the trial court should not have applied the Uniform Commercial Code to imply a warranty of fitness for a particular purpose or a warranty of merchantability into the Agreement.  The basis for this contention is Corle's characterization of this trans-

**2.** Although Corle does not expressly so state, we presume he is also arguing that the limited express warranty that *was* included in the Agreement was not breached.  Otherwise, even if we accepted his argument as to the warranties of fitness and merchantability, it would be to no avail.  Cober would still be entitled to judgment in his favor for breach of express warranty because the trial court also found that the Agreement's express warranty had been breached.  We could consider Corle to have forfeited his right to relief on appeal by having failed to follow through on this argument.  We consider his argument only because we presume that the major focus of the trial court's determination was in fact a perceived breach of the implied warranties and that the case might well have been decided otherwise had these warranties not been held applicable.

action as an agreement for the construction of a building to which the UCC would not apply, rather than as a sale of goods to which the UCC would apply.[3]

The scope of applicability of Article 2 of the Uniform Commercial Code has recently been stated as follows:

Section 2102 restricts the scope and applicability of Article II of the Uniform Commercial Code (including the implied warranty provisions of Sections 2314 and 2315 ...), to cases involving "transactions in *goods*." 13 Pa. C.S.A. § 2102. (Emphasis added). "Goods" are defined as "all things .. which are movable at the time of identification to the contract for sale other than money in which the price is to be paid, investment securities ..., and things in actions." 13 Pa.C.S.A. § 2105. Thus, in order to be a "transaction in goods," the subject matter of the transaction—the putative good—must be tangible and movable.

. . . .

[However] [w]hen the transaction involves predominantly the rendition of services, the fact that tangible movable goods may be involved in the performance of services does not bring the contract under the Code.

*Whitmer v. The Bell Telephone Co. of Pa.*, 361 Pa.Super. 282, 288, 522 A.2d 584, 587 (1987).

Corle argues that although the instant Agreement did incidentally call for the sale of the steel building and the component parts thereof, this was merely incidental to the construction "services" aspect of the Agreement. We disagree. We follow the analysis pursued by this court in *York Heating Co. v. Flannery*, 87 Pa.Super. 19 (1926), where the court was faced with a similar issue under the

**3.** Corle also argues that even if this transaction *is* characterized as being predominantly a sales transaction, nevertheless the items sold were not "goods" as defined in the UCC because they were not moveable. Corle makes this argument in a single sentence in his appellate brief and cites no precedent in support thereof. Therefore, we consider it waived. *See Ibn–Sadiika v. Riester*, 380 Pa.Super. 397, 551 A.2d 1112 (1988).

now repealed Sales Act, the precursor to the UCC. In *York*, the contract at issue provided for the furnishing and erection of a new heating system for an existing building. The court sought to determine whether the implied warranty of fitness for a particular purpose provided under the Sales Act applied to this transaction. The court stated the applicable test as follows:

> Where a dealer sells a machine or similar apparatus and the setting up or installation is but incidental to the sale ... the Sales Act applies; but where as here the contract is really a building or construction agreement and the furnishing of material and apparatus is merely an incident thereto, the Sales Act has no application.

*Id.* at 24.

In applying this test to the facts before it, the *York* court appeared to focus its attention on the terms of the contract itself. The court noted, for example, that the contract included all the customary terms found in construction agreements, such as those requiring compliance with plans and specifications, diligent prosecution of the work, retention of the right of the owner to employ additional labor on default of the builder, and requiring supervision of the project by an architect. The court also emphasized that the builder had taken a wide variety of materials and apparati and had assembled them into a system designed by its engineers so as to create a new and different unit, i.e. a complete heating system. Thus, the *York* court found that the transaction before it was predominantly one involving construction services, to which the sale of materials was incidental. *See also Bonebrake v. Cox*, 499 F.2d 951 (8th Cir.1974) (proper inquiry is whether contract's predominant factor, thrust, purpose, "reasonably stated, is the rendition of service, with goods incidentally involved (e.g. contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g. installation of a water heater in a bathroom.)").

In determining whether a sale or a rendition of construction services was predominantly involved in the Agreement

before us, we look first to the Agreement's own terms. Clearly the Agreement, which is entitled "Purchase Agreement" and which refers to the parties as "Buyer" and "Seller," indicates that the predominant purpose of this transaction was a sale. As indicated in the summary of the terms of the Agreement provided above, the Agreement does not contain terms customarily found in construction contracts, such as those found in the contract involved in the *York* case, but does contain many terms customarily found in a sales contract. For example, the Agreement contains terms regarding risk of loss during transit of the items to be sold and handling of claims for shortages.

Moreover, we note that contrary to appellant's contention, this Agreement did not involve construction services at all comparable to those customarily involved in constructing a building. This Agreement involved a pre-designed, pre-engineered building. As the testimony of appellant himself indicated, the steel building involved here came as a "kit" which simply had to be assembled. Moreover, appellant did not agree to and did not do any work other than assembling the steel building kit and putting in the insulation, since appellee had others do all heating, electrical and plumbing work. Therefore, appellant did not take a great variety of materials and assemble them into something new, as in *York*, but rather simply assembled the product he was selling to appellee. Clearly, this transaction was predominantly a sale of goods to which the provisions of Article 2 of the UCC properly applied. *Contrast DeMatteo v. White*, 233 Pa.Super. 339, 336 A.2d 355 (1975) (construction of residence from start to finish not a sales transaction within UCC). *See also Robertson Cos., Inc. v. Kenner*, 311 N.W.2d 194 (N.D.1981) (transaction providing for both sale and erection of pre-designed steel grain storage buildings is sale of goods within UCC).

■ Appellant next argues that the trial court applied an improper measure of damages in holding that appellant was liable for approximately $38,000. The trial court awarded this amount based on appellee's evidence establishing that

this was the reasonable cost of removing the present roof and insulation, which had lost much of its effectiveness due to contraction after having absorbed the excessive moisture from the building, and of replacing that insulation with an effective vapor barrier which would prevent the same problem from recurring. Appellant argues that this amount is excessive when considered in the context of the original price of the building, which was $55,500, and results in a windfall to appellee. Appellant contends that his evidence at trial suggested other proposed methods of curing the building's condensation problem which were less expensive than the one sought by appellee. Alternatively, appellant suggests that the proper measure of damages should be the difference in market value of the building as it should have been and as it actually is with its present defect. If this measure of damages is used, appellant argues that no remand is necessary. He contends that since appellee presented no evidence of such a difference in market value, judgment n.o.v. in appellant's favor should be entered.

Having already determined that the Uniform Commercial Code applies to this case, we turn to its remedy sections. Section 2714 provides the following:

Damages of buyer for breach in regard to accepted goods

(a) Damages for nonconformity of tender.—Where the buyer has accepted goods and given notification (section 2607(c)) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the breach of the seller as determined in any manner which is reasonable.

(b) Measure of damages for breach of warranty.—The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(c) Incidental and consequential damages.—In a proper case any incidental and consequential damages under

section 2715 (relating to incidental and consequential damages of buyer) may also be recovered.

13 Pa.C.S.A. § 2714.

In sum, these provisions permit the buyer who has accepted goods not in conformity with an applicable warranty to recover the difference in value of the goods as they are and as they would have been if as warranted, unless special circumstances show proximate damages of another amount. In addition, the buyer may recover, *inter alia,* consequential damages, including losses resulting from his particular need of which the seller had reason to know and which could not reasonably be prevented by the buyer. *See* 13 Pa.C.S.A. § 2715. Moreover, as the official comment to section 2714(b) states, the measure of damages for breach of warranty provided by this section "describes the usual, standard and reasonable method of ascertaining damages in the case of breach of warranty but it is not intended as an exclusive measure." 13 Pa.C.S.A. § 2714 official comment 3.

In construing this section, leading commentators on the Uniform Commercial Code have indicated that a useful objective measure of the difference in the value of the goods as is and as warranted is the cost of repair or replacement of the goods. *See* White, J. and Summers, R., *Uniform Commercial Code,* 3d ed., at 503 (1988). Although appellant concedes this to be true, he argues that cost of repair can only be the measure of damages where that amount is not excessive in comparison to the estimated difference between the market value of the completed building as is and as it would have been without its present defect. If the cost of repair is excessive, then the difference in market value should be the measure of damages. Appellant supports this argument by reference to case law involving the proper measure of damages in a construction defects case. *See, e.g., Douglass v. Licciardi Construction Co., Inc.,* 386 Pa.Super. 292, 562 A.2d 913 (1989).

We recognize this principle as established in cases involving construction defects and further recognize that it

may be generally applicable to cases decided under the U.C.C. *See* Uniform Commercial Code, *supra,* at 503–05. However, we do not regard this principle as being determinative of the proper measure of damages in this case. As we have indicated, the difference in value of the goods, whether or not measured by cost of repair, is not the sole and exclusive measure of damages for breach of warranty under the Code. The Code permits an award of proximate damages of a different amount if special circumstances exist and further allows in certain cases for recovery of losses resulting from the particular need of the buyer. We view this as a case where the evidence clearly showed that appellant was informed that appellee wanted effective insulation in order to control his heating costs and was also concerned that no condensation problems be created in the building. Because of appellant's failure to meet these particular needs, appellee is now in possession of a building that not only has a condensation problem, but also has insulation in the ceiling which has been rendered ineffective because it was saturated with the condensation in the building and then contracted.

Under these circumstances, it is clear that the trial court did not abuse its discretion in determining that the proper and reasonable measure of damages was the cost of removing the ineffective insulation and replacing it with new insulation with a vapor barrier so as to effectively insulate the building while eliminating the condensation problem. The evidence indicated that the cost of such a repair, which would place appellee in the position he would have been in had the building been properly insulated in the first place, was approximately $38,000. The award of this amount was not error.[4]

Judgment affirmed.

4. Appellant also argues in passing in his brief to this court that appellee had a duty to "cover" or mitigate his damages and failed to do so. This argument was not made in post-trial motions to the trial court and we, therefore, decline to address it. Pa.R.A.P. 302.