678 A.2d 810

**Patricia and Dino GREGORIO, Appellants,**

v.

**Dr. Martin ZELUCK, Dr. Daniel Colimbi, Dr. Michael Podolsky, and Obstetricians and Gynecologist, Ltd., Appellees.**

Superior Court of Pennsylvania.

Argued April 11, 1996.

Filed June 24, 1996.

Charles J. Cunningham, III, Philadelphia, for appellants.

Eugene Patrick Feeney and Francis J. McGovern, Blue Bell, for appellees.

Before CIRILLO and CERCONE, President Judges Emeritus, and BECK, J.

CIRILLO, President Judge Emeritus.

Patricia and Dino Gregorio appeal from an order entered in the Court of Common Pleas of Philadelphia County denying the Gregorios' motion to remove a nonsuit in favor of the appellees, and entering judgment in favor of the appellees. We affirm.

In November of 1988, Ms. Gregorio gave birth to a baby boy at Methodist Hospital. During the course of delivery, appellee, Dr. Zeluck, performed an episiotomy, a surgical incision made to a woman's vagina to prevent tearing of the perineum and trauma to the baby. Following delivery, Ms. Gregorio's incision was packed with pieces of surgical gauze, known as "sponges," to reduce bleeding.

Approximately five days after her delivery, Ms. Gregorio complained that she was not feeling well. Specifically, she was itching, was not able to get comfortable when trying to

fall asleep, and was bleeding; she was concerned because the bleeding was very dark. Ms. Gregorio telephoned the appellees' office, spoke with the receptionist, Denise DiDonatis, and was told by Denise that the symptoms Ms. Gregorio described were normal; the itching was caused by the stitches, and bleeding was expected after delivery. Denise assured Ms. Gregorio that she would inform the doctors of her call. A couple of days later, Ms. Gregorio again spoke with Denise, who reassured her that her symptoms were not unusual. After several more days, Ms. Gregorio experienced pain in her lower abdomen, and detected a very bad odor. She called the doctors' office several more times, and was advised that her "insides were shrinking back to normal" and that the doctors did not need to see her until her regularly scheduled six week checkup.

According to Ms. Gregorio, she began to feel compelled to avoid people, even her baby, as a result of the odor she was experiencing; she was fearful people would notice the smell. Several weeks later, while in the shower, Ms. Gregorio felt a foreign object protruding from her vagina. After pulling it out, she telephoned the doctors' office; it was determined that the object was a piece of surgical packing left inside of her after the delivery.

The Gregorios filed a complaint against the doctors alleging medical malpractice based on the failure of the attending doctor, Dr. Zeluck, to remove sponges following the delivery, and on the failure of the doctors to respond to Ms. Gregorio's complaints of odor. A jury trial commenced before the Honorable Bernard Goodheart. At the conclusion of the Gregorios' case, the doctors moved for a compulsory nonsuit. Notes of testimony were transcribed and oral argument was heard. Judge Goodheart granted the doctors' motion. The Gregorios' motion for reconsideration and post-verdict relief was denied. This appeal followed.

The following issues have been presented for our consideration:

(1) Whether Ms. Gregorio's complaint of severe, noxious, nauseating odor beginning a few days after delivery on November 22, 1988, and lasting until December 29, 1988, caused by surgical sponges left in her vagina, is a compensable injury?

(2) Whether Ms. Gregorio's post-traumatic stress, lasting for several years beyond December, 1988, is causally connected to the prolonged, severe, noxious, nauseating odor suffered by her?

(3) Whether the three doctors are liable for the failure of their staff to bring Ms. Gregorio in for an office examination after her complaint of odor?

(4) Whether Mr. Gregorio has abandoned his claim of loss of consortium by divorcing Ms. Gregorio where the appellants' divorce was caused by the effects of the doctors' negligence?

When a nonsuit is entered, the lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement. *Dion v. Graduate Hospital of Univ. of Pennsylvania*, 360 Pa.Super. 416, 520 A.2d 876 (1987); *Kelly v. Doran*, 312 Pa.Super. 286, 458 A.2d 962 (1983). In order to justify granting a nonsuit, it must appear from the plaintiff's statement of his or her case that there is a complete absence of evidence legally sufficient to maintain the action. *Dion, supra.* The plaintiff must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from such evidence; any conflict in the evidence must be resolved in the plaintiff's favor. *Gorfti v. Montgomery*, 384 Pa.Super. 256, 558 A.2d 109 (1989), *appeal denied*, 524 Pa. 608, 569 A.2d 1367 (1990).

In order to set forth a prima facie case of malpractice, a plaintiff must establish (1) a duty owed by the doctor to the patient; (2) a breach of that duty; (3) that the breach of duty was the proximate cause, or substantial factor in bringing about the harm suffered by the patient; and (4) damages suffered by the patient resulting directly from that harm. *Mitzelfelt v. Kamrin*, 526 Pa. 54, 60–61, 584 A.2d 888, 891

(1990). In order to meet this burden, the plaintiff is required to provide expert testimony to establish, to a reasonable degree of medical certainty, that the acts of the physician deviated from acceptable medical standards, and that such deviation was the proximate cause of the harm suffered. *Id.*; see *Chandler v. Cook*, 438 Pa. 447, 265 A.2d 794 (1970) (in malpractice cases, a jury will not be permitted to find negligence without expert testimony establishing variance from accepted medical practice); *Strain v. Ferroni*, 405 Pa.Super. 349, 592 A.2d 698 (1991) (same). An exception to the expert testimony requirement applies only where the physician's departure from the norm is so simple and obvious, it is within the comprehension of ordinary laypersons. *Chandler, supra.*

Dr. Dorothy Czarnecki, a physician trained in both obstetrics and gynecology, testified as the Gregorios' expert witness. Dr. Czarnecki opined that the failure to remove the sponge was "not consistent with medically accepted standards." Dr. Czarnecki also concluded that Ms. Gregorio "suffered no medical problems, other than an odor, which is not medical but is certainly personal." Furthermore, the expert conceded that Ms. Gregorio's complaints of discharge and bleeding were not abnormal. As the testimony must be construed in Ms. Gregorio's favor, *Gorfti, supra*, we conclude that Dr. Zeluck was negligent in failing to remove the surgical gauze from Ms. Gregorio after her delivery and episiotomy; such action, according to the Gregorios' expert, was not consistent with medically accepted standards. *Mitzelfelt, supra.* In fact, Dr. Zeluck's departure from the norm in this regard is presumably within the comprehension of ordinary laypersons. *Chandler, supra.*

What remains for this court to determine is whether Dr. Zeluck's failure to remove the sponge resulted in harm to Ms. Gregorio. We conclude that the Gregorios failed to establish any link between Dr. Zeluck's negligence and a legally cognizable injury. It was established that any physical pain experienced by Ms. Gregorio during the days following labor was not related to Dr. Zeluck's negligence. In fact, the testimony revealed that Ms. Gregorio had no abnormal physi-

cal pain related to the sponge; it is the unpleasant odor resulting from the sponge of which Ms. Gregorio complains.

"Not every wrong constitutes a legally cognizable cause of action.... Not every loss constitutes a legal injury for which compensation is available." *Armstrong v. Paoli Memorial Hospital*, 430 Pa.Super. 36, 42, 633 A.2d 605, 608 (1993), *appeal denied*, 538 Pa. 663, 649 A.2d 666 (1994). In an analogous case addressing the compensable harm issue, the Pennsylvania Supreme Court was asked to determine specifically "whether asymptomatic pleural thickening,[1] *i.e.,* unaccompanied by disabling consequences or physical impairment, is a compensable injury" giving rise to a cause of action. *Simmons v. Pacor, Inc.*, 543 Pa. 664, 672, 674 A.2d 232, 236 (1996).[2] The Court concluded that no physical injury was established necessitating an award of damages. Similarly, in *Lubowitz v. Albert Einstein Medical Center*, 424 Pa.Super. 468, 623 A.2d 3 (1993), this court found no legally cognizable injury in an appellant's fear that she would develop the AIDS virus after being exposed to it. We concluded that appellant, in her asymptomatic state, could not recover monetary damages. *Id.* at 470–72, 623 A.2d at 5.

Likewise, in the instant case, Ms. Gregorio suffered no disabling consequences, physical impairment, or physical symptoms as a result of her odor. While we sympathize with Ms. Gregorio and the unpleasant experience she endured, we find that the odor resulting from Dr. Zeluck's negligence is not a sufficient physical injury to warrant damages.

The Gregorios cite *Botek v. Mine and Safety Appliance Corp.*, 531 Pa. 160, 611 A.2d 1174 (1992) in support of their position. In *Botek*, the plaintiff, a firefighter, utilized an air pak which had been inadvertently filled with carbon monoxide

1. Pleural thickening, detectable by x-ray, has been defined as "the formation of calcified tissue on the pleura, the membranes surrounding the lungs," and is caused by asbestos exposure. *Simmons*, 543 Pa. at 672, 674 A.2d at 236.

2. The Court decided three consolidated appeals under the heading of *Simmons v. Pacor, Inc.*; the two other cases were *Murray v. Philadelphia Asbestos Corp.* and *Giffear v. Johns–Manville Corp.*

instead of oxygen. The plaintiff suffered injuries as a result of his inhalation of the carbon monoxide and was briefly hospitalized for respiratory therapy. He suffered headaches, nausea, and twitching for several months. The Court specifically found that the plaintiff suffered "objective, measurable, observable physical injuries," although such injuries were "relatively mild." *Id.* at 166, 611 A.2d at 1177. The Gregorios claim that, like the injury in *Botek,* the odor described by Ms. Gregorio was objective, measurable and observable. The odor cannot, however, be classified as a physical injury, and is, therefore, easily distinguished from the injury in *Botek.*

In addition to their assertion that the odor itself should be treated as a compensable injury, the Gregorios contend that Ms. Gregorio should recover for the emotional, post-traumatic effects of the odor. Ms. Gregorio's psychologist, Dr. Frances Bonds–White, testified that Ms. Gregorio suffers from post-traumatic stress disorder. Dr. Bonds–White opined that such disorder was a result of Ms. Gregorio's "pain and suffering" and the fact that Ms. Gregorio did not believe her "pain" was being taken seriously. While Dr. Bonds–White refers to "pain," a physical injury has not been proven from Dr. Zeluck's negligence, only an odor complained of by Ms. Gregorio.

The Gregorios again rely upon *Botek, supra,* in support of their position. As as a result of his physical injuries, the plaintiff in *Botek* sustained long term emotional ills, such as post-traumatic stress disorder. The Court found:

> Plaintiff-Appellant suffered objective, measurable, observable physical injuries here (although they were relatively mild). **All of the consequent psychological and emotional pain and suffering is compensable in that situation, and our law has long so held under the so-called "impact rule."**

*Id.* at 166, 611 A.2d at 1177 (emphasis added).

In order to sustain a cause of action for negligent infliction of emotional distress, a plaintiff must demonstrate some type of **physical injury**. *Armstrong,* 430 Pa.Super. at 43–45, 633 A.2d at 609. The continuing validity of the physical

impact rule, *see Botek, supra,* was recently acknowledged by this court in *Brown v. Philadelphia College of Osteopathic Medicine,* 449 Pa.Super. 667, 674 A.2d 1130 (1996). In that case, while in her sixteenth week of pregnancy, the plaintiff, Mrs. Brown, arrived at the emergency room with her husband. Mrs. Brown complained of vaginal bleeding, severe abdominal pain, and nausea. Mrs. Brown was placed in an examining room for approximately one hour and fifteen minutes before being seen by a physician. During that time she continued to experience bleeding, pain, and nausea; she suffered a miscarriage with only her husband present. The fetus remained between her legs for approximately fifteen minutes. When the doctor arrived, he cut the umbilical cord and placed the fetus in a pan. A nurse then placed the fetus in Mrs. Brown's arms and took photographs of Mrs. Brown and the fetus; this was allegedly done to alleviate stress and to help them bond. The Browns filed a claim for negligent infliction of emotional distress. Recognizing the validity of the physical impact rule, this court stated:

> Where ... a plaintiff sustains bodily injuries, even though trivial or minor in character, which are accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff, then mental suffering is a legitimate element of damages. A legal duty of care is owed by hospitals to persons receiving emergency room treatment. We believe that the finding of a breach of this duty provides a sufficient basis for recovery by appellee. **Instantly, appellant's breach of this duty resulted in a physical impact upon appellee in that she experienced physical harm during her miscarriage as a result of appellant's failure to attend to her and, further, was physically impacted when she was given the fetus to hold.**

*Id.* at 679, 674 A.2d at 1135–36 (emphasis added). Unlike Mrs. Brown, Ms. Gregorio is not entitled to recovery for her alleged post-traumatic emotional distress; Ms. Gregorio's distress did not result from a physical harm arising out of Dr. Zeluck's negligence. *See Simmons, supra* (holding that be-

cause asymptomatic pleural thickening is not a sufficient physical injury, the resultant emotional distress damages are likewise not recoverable); *Fewell v. Besner*, 444 Pa.Super. 559, 664 A.2d 577 (1995) (claim for negligent infliction of emotional distress dismissed where appellant asserted that her "incarceration" constituted physical impact). Our examination of the record reveals a complete absence of evidence legally sufficient to maintain an action against the appellees. *Dion*, *supra*. The trial court did not err in denying the Gregorios' motion to remove the nonsuit.

The Gregorios' remaining claims are easily dismissed. The Gregorios have cited no authority for the general averments set forth in their last two issues on appeal. Pennsylvania Rule of Appellate Procedure 2119 states, in pertinent part, "[t]he argument **shall** be divided into as many parts as there are questions to be argued; and shall have at the head of each part ... the particular point treated therein, followed by such discussion **and citation of authorities as are deemed pertinent.**" Pa.R.A.P. 2119(a) (emphasis added). *See Burrell Construction & Supply Co. v. Straub*, 440 Pa.Super. 596, 603, 656 A.2d 529, 533 (1995), *appeal denied*, 542 Pa. 655, 668 A.2d 1120 (1995) (appellant's claim found to be waived where no legal authority was cited in support of appellant's claim); *Cober v. Corle*, 416 Pa.Super. 191, 197 n. 3, 610 A.2d 1036, 1039 n. 3 (1992) (same). We need not address the remaining issues.[3]

Affirmed.

**3.** Regardless of the Gregorios' failure to adequately argue their last two points, these claims would ultimately fail. As we have determined that the Gregorios have not proven a legally cognizable injury, their claim that the remaining doctors are liable for the staff's failure to schedule an examination for Ms. Gregorio is without merit. Likewise, because a loss of consortium claim is a derivative cause of action, such a claim will not survive, as we have determined that no injury was established.