Argued and submitted October 8, affirmed November 19, 1997

## J. Gregg MINDT,
### *Appellant,*

*v.*

## David K. WINCHESTER, M.D.,
### *Respondent.*

### (9508-05354; CA A94951)

948 P2d 334

Charles E. Corrigan argued the cause for appellant. With him on the briefs were Mark L. Busch, O'Donnell Ramis Crew Corrigan & Bachrach, Keith E. Tichenor and Pozzi Wilson Atchison.

Marjorie A. Speirs argued the cause for respondent. With her on the brief were Janet M. Schroer and Hoffman, Hart & Wagner.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Plaintiff appeals from a judgment entered after the trial court granted defendant's motion for summary judgment on plaintiff's medical malpractice claim.[1] We review to determine whether there is a genuine issue of material fact and whether, viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party, defendant is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). We affirm.

Defendant is a physician whose medical speciality is urology and the treatment of male infertility. Plaintiff and defendant were social friends and played together in a musical band from October 1992 until August 1994. While plaintiff was in the band, his wife became the band manager. She also had a social relationship with defendant.

In the summer of 1993, plaintiff and his wife decided that plaintiff should consult a physician about an infertility problem with which plaintiff previously had been diagnosed. Plaintiff's primary care physician referred him to a urologist, Dr. Giesy. Unbeknownst to plaintiff, defendant is a medical partner of Giesy's. Plaintiff first consulted Giesy on August 30, 1993. During that appointment, plaintiff encountered defendant. Plaintiff and defendant discussed the reason for plaintiff's office visit with Giesy and the tests that could be done to evaluate plaintiff's condition.

On September 7, 1993, at Giesy's request, defendant called plaintiff to inform him that the test results confirmed that plaintiff suffered from azoospermia, which is the absence of sperm in his seminal fluid. Defendant made some recommendations and instructed plaintiff to schedule a follow-up appointment with Giesy. Plaintiff did not discuss specifically with defendant his reasons for having his fertility tested.

In March 1994, plaintiff and his wife attended a party at defendant's home. Plaintiff left early, but his wife

---

[1] The court entered judgment pursuant to ORCP 67 B on this claim.

remained. She and defendant engaged in sexual intercourse in defendant's hot tub. Plaintiff returned to defendant's home later that evening to take his wife home. Although plaintiff suspected that something sexual had occurred between his wife and defendant, plaintiff's wife convinced him that he was wrong.

On June 23, 1994, plaintiff made an appointment with defendant and met with him in defendant's medical office. They discussed plaintiff's options in the light of his azoospermia and his concerns about alternative methods available to him and his wife to conceive a child. Plaintiff had no further medical consultations with defendant.

After June 23, defendant and plaintiff's wife renewed their romantic relationship, which continued until December 1994. In November 1994, plaintiff and his wife divorced. Plaintiff filed this action in August 1995 alleging that, upon his seeking medical examination, treatment and advice regarding plaintiff's fertility and inability to conceive a child with his wife, defendant failed to use the degree of care, skill and diligence used by ordinarily careful physicians in the same or similar circumstances. The trial court granted defendant's motion for summary judgment on the medical malpractice claim.[2] The court explained:

> "The weight of authority holds that, unless the sexual relationship was undertaken **as a part of the medical treatment**, no action for medical malpractice will lie. The exception to that rule arises in or is embodied by psychotherapist-patient cases which turn on application of the so-called 'transference phenomenon,' which rarely arises outside the psychotherapist-patient relationship."

(Boldface in original.)

On appeal, plaintiff argues that the trial court erred in granting defendant's motion for summary judgment because, as a matter of law, defendant breached his duty[3] as

---

[2] The trial court denied defendant's motion for summary judgment on plaintiff's claims for intentional and reckless infliction of emotional distress.

[3] Plaintiff argues that defendant breached his statutory duty of care under ORS 677.095, his fiduciary duty to his patient and his heightened duty of care as a fertility specialist.

a physician when he engaged in a sexual relationship with plaintiff's wife while treating plaintiff for infertility. Additionally, plaintiff argues that defendant's conduct both undermined plaintiff's course of treatment and failed to fulfill the purpose for which plaintiff retained him.[4] Defendant responds that summary judgment on the medical malpractice claim was appropriate because he did not provide medical treatment to plaintiff and that, even if he did, his sexual relationship with plaintiff's wife was not within the scope of the physician-patient relationship.

ORS 677.095(1) describes a physician's duty of care to a patient. It provides:

> "A physician * * * licensed to practice medicine * * * has the duty to use that degree of care, skill and diligence which is used by ordinarily careful physicians * * * in the same or similar circumstances in the community of the physician * * * or a similar community."

To prevail in a medical malpractice action, a plaintiff must prove that the defendant physician failed to use reasonable care and diligence in the application of medical skill and that the defendant's failure to do so injured the plaintiff. *See Mayor v. Dowsett*, 240 Or 196, 211-16, 400 P2d 234 (1965) (in medical malpractice action, causation can be proven indirectly, and the doctrine of *res ispa loquitur* can apply); *Zavalas v. Dept. of Corrections*, 124 Or App 166, 171-72, 861 P2d 1026 (1993), *rev den* 319 Or 150 (1994) (in medical malpractice action, the *prima facie* element of duty is statutory, ORS 677.095(1)). An action for medical malpractice will lie only for activities in which a defendant was involved in the "practice of medicine." *Humphers v. First Interstate Bank*, 68 Or App 573, 577, 684 P2d 581 (1984), *aff'd in part, rev'd in part on other grounds* 298 Or 706, 696 P2d 527 (1985).

In this case, plaintiff sought medical treatment from Giesy for infertility. At Giesy's request, defendant reported to plaintiff that plaintiff suffers from azoospermia and discussed treatment options, as well as alternative methods

---

[4] Plaintiff's latter two arguments were not presented to the trial court and, thus, are not preserved for appeal. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991).

available to plaintiff and his wife to conceive a child. Assuming, without deciding, that defendant provided medical treatment to plaintiff, the question is whether defendant breached his duty as a physician by engaging in a sexual relationship with plaintiff's wife while treating plaintiff for azoospermia. We conclude that he did not. In *Humphers*, we held that it is

> "axiomatic that a physician, merely because of his trade, does not have a greater responsibility in nonmedical matters than that of the general public. An action for medical malpractice will only lie for activities in which the defendant was involved in the practice of medicine."

*Id.* Defendant's sexual relationship with plaintiff's wife was not undertaken as part of plaintiff's medical treatment. *See Odegard v. Finne*, 500 NW2d 140, 143 (Minn Ct App 1993) (physician's sexual relationship with patient is not actionable as professional malpractice unless the sexual contact is initiated by physician under the guise of medical treatment). Neither did defendant's sexual relationship with plaintiff's wife affect plaintiff's physical condition or treatment for azoospermia. Whatever else may be said of defendant's relationship with plaintiff's wife, that relationship, as a matter of law, was not the practice of medicine.

Affirmed.