and not due for thirty days or more after date of decision).[8]

For the foregoing reasons, the Order of the Superior Court is affirmed, albeit on different grounds, and this case is remanded to the Superior Court for further proceedings consistent with this Opinion. If counsel files another *Anders* brief, said brief is to conform to the requirements set forth in this Opinion.

Justice GREENSPAN did not participate in the consideration or decision of this case.

Justice SAYLOR, EAKIN, and BAER, Justice TODD and Justice McCAFFERY join the opinion.

**David THIERFELDER and Joanne Thierfelder, H/W, Appellants**

v.

**Irwin WOLFERT, M.D., and Medical Center at Gwynedd and Abington Memorial Hospital, Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 12, 2009.

Filed May 19, 2009.

---

**8.** The defendant may also file a brief, proceeding *pro se*, to the extent that he has issues or other matters for the court to consider and/or a response to make to counsel's brief.

Bruce G. Cassidy, Princeton, New Jersey, for appellant.

Mary E. Dixon, Philadelphia, for Wolfert, appellee.

Teresa F. Sachs, Philadelphia, for Medical Center and Abington Memorial, appellees.

BEFORE: FORD ELLIOTT, P.J., and STEVENS, ORIE MELVIN, LALLY–GREEN, KLEIN, BOWES, PANELLA, DONOHUE and SHOGAN, JJ.

OPINION BY KLEIN, J.:

¶ 1 Joanne Thierfelder [1] (Wife/Joanne) appeals from an order sustaining preliminary objections and dismissing claims against Irwin Wolfert, M.D. [2] Wife's complaint essentially alleged that Dr. Wolfert acted negligently when he had a consensual sexual relationship with her for one year while she was his patient and being treated by him for anxiety and depression. [3] As a result of that affair, Wife claimed that she suffered and will continue to suffer significant psychological harm. [4] Because it is alleged that Dr. Wolfert, although a general practitioner, was rendering psychological care to Joanne, we believe that she has a cause of action and therefore reverse the grant of preliminary objections.

¶ 2 The trial court dismissed this case on preliminary objections, *not* at the summary judgment stage. [5] Therefore, all ma-

---

1. Joanne's husband, David Thierfelder, is also a co-plaintiff/appellant. He is seeking loss of consortium.

2. Our holding today applies solely to Defendant Wolfert as the Thierfelders do not challenge the dismissal of the other Defendants, Abington Memorial Hospital or the Medical Center at Gwynedd.

3. Specifically, the Thierfelders' complaint included the following causes of action: negligence, medical malpractice, fraudulent misrepresentation, negligence infliction of emotional distress, willful, wanton and reckless behavior, loss of consortium, intentional infliction of emotional distress and battery.

4. We note that in their brief the Thierfelders "acknowledge that the court below . . . was

justified in dismissing Appellant husband's direct claim in this action below." Appellants' Brief, at 37. Thus, we take this statement to be the equivalent of Appellants conceding Husband's claim on appeal and solely challenging the dismissal of Wife's claims and non-derivative claims brought by Husband.

5. Unlike preliminary objections, at the summary judgment stage a court may look to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits in order to determine whether a genuine issue of material fact exists. *Merriweather v. Philadelphia Newspapers, Inc.*, 453 Pa.Super. 464, 684 A.2d 137, 140 (1996); Pa.R.C.P. 1035.2. Here, the court was confined to look to the *complaint* and nothing else when deciding Defendants' preliminary objections.

terial facts set forth in the Thierfelders' complaint, as well as all reasonable inferences reasonably deduced therefrom, shall be admitted as true. *Sullivan v. Chartwell Investment Partners, L.P.,* 873 A.2d 710, 714 (Pa.Super.2005) *(citations omitted).* The following is what the Thierfelders pled, in part, in their third amended complaint:

> (1) Both plaintiffs continued treating with defendants for a number of years during which time each plaintiff, in confidence, advised defendant Wolfert, of his/her respective medical conditions and problems.
>
> (2) During the physician/patient relationship, plaintiff Joann Thierfelder treated with defendant Wolfert for **depression and anxiety.** Defendant Wolfert prescribed various medications to **treat wife plaintiff's depression.** [emphasis added]
>
> (3) After wife plaintiff, who was still being treated by defendant Wolfert for depression, informed defendant Wolfert of her feelings, defendant Wolfert, during the spring of 2002, began a sexual relationship with wife plaintiff, his patient.

Plaintiffs' Third Amended Complaint, 2/4/2004, at 3. Regardless of whether these averments are actually true, they must be accepted as such for the purposes of deciding preliminary objections. Because the trial court failed to follow the proper standard of review when deciding the Defendants' preliminary objections, we must reverse.

■■■ ¶ 3 Substantively, we believe that a patient does have a cause of action against either a psychiatrist or a general practitioner rendering psychological care, when during the course of treatment the physician has a sexual relationship with the patient that causes the patient's emotional or psychological symptoms to worsen. Therefore, it was error for the trial court to dismiss the Thierfelders' complaint at the preliminary objection phase.[6] Accordingly, we vacate the trial court's order dismissing the Thierfelders' amended complaint and remand this matter.

¶ 4 In coming to our conclusion today, we recognize that this situation may be different from a case where a general practitioner is rendering only medical care and is not treating the patient for anxiety or other psychological problems.[7] We express no opinion as to whether there is or is not a cause of action when none of the treatment of the general practitioner is for emotional problems.

■■■ ¶ 5 However, when a general practitioner *is* also rendering psychological care, just like a psychiatrist, that general practitioner owes a duty of professional care to such a patient. The physician's actions coupled with his or her awareness of the patient's emotional issues (anxiety, depression and marital problems) carries with it a foreseeable and unreasonable risk of mental and/or emotional harm to the patient. Therefore, we reverse and remand.

**I**

¶ 6 The following facts were pled in the Thierfelders' third amended complaint. In

---

6. We decline to extend our holding today to encompass a cause of action for spouses, such as Mr. Thierfelder, whether or not they are patients or not of defendant doctors. Our decision speaks only to the actual patients being treated by a defendant doctor with whom he or she is also having a sexual relationship.

7. We understand that Dr. Wolfert denies that he was treating Mrs. Thierfelder for emotional problems. However, this was properly pled and this is an appeal of preliminary objections, not a motion for summary judgment.

1997 the Thierfelders began treating with Dr. Wolfert, a family physician. Plaintiff's Third Amended Complaint, 1/30/2004, at 2. Among other ailments, Wife presented with and was treated by Dr. Wolfert for depression, anxiety and marital problems. *Id.* at 3. This treatment included prescribing Wife various anti-depressant medications. *Id.* During the course of treatment, both Husband and Wife revealed "details of [their] intimate relations" with each other to Dr. Wolfert so that he "could offer appropriate medical care and/or medication for plaintiffs." *Id.* According to Wife, during the course of her treatment with Dr. Wolfert she told Dr. Wolfert that he was her "hero," that he had "cured" her, and that she was in love with him. *Id.*

¶ 7 According to the pleadings, in the Spring of 2002, Dr. Wolfert and Wife began a sexual relationship. They would have sexual relations on a weekly basis in the doctor's medical office, local places, cars, and the doctor's parents' home. Wife ultimately ended the relationship in January 2003. *Id.* at 6. In March 2003, Wife confessed to Husband her past sexual relationship with Dr. Wolfert. *Id.*

¶ 8 The Thierfelders filed their first complaint[8] against Wolfert in 2003; after several amendments, they filed a third and final amended complaint (Third Amended Complaint) to which Defendants ultimately filed preliminary objections which were granted after oral argument.

¶ 9 The trial court based its decision on *Long v. Ostroff,* 854 A.2d 524 (Pa.Su-per.2004). Specifically, the trial court granted the preliminary objections based on *Long's* holding that "a general practitioner's duty of care does not prohibit an extramarital affair with a patient's spouse." Trial Court Opinion, 5/4/2007, at 6, *citing Long, supra* at 526. Moreover, the trial court explicitly extended the *Long* holding to apply to the facts of the present case and

¶ 10 Here the trial court also believed that although Wolfert's sexual relationship with Wife may have been unethical, it did not violate the law or represent a breach of any professional duty. Thus, the trial court held that "the law is clear: it is not a breach of the duty of care when a general practitioner engages in a sexual relationship with a patient." *Id.*

## DISCUSSION

### 1. Medical Malpractice Claims

¶ 11 To establish a case of malpractice requires evidence that the physician acted negligently or unskillfully performed his duties which are devolved and incumbent upon him on account of his relations with his patients, or lacked the proper care and skill in the performance of a professional act. *Keech v. Mead Johnson and Co.,* 398 Pa.Super. 329, 580 A.2d 1374 (Pa.Super.1990). In order to set forth a *prima facie* case of malpractice, a plaintiff must establish the essential elements of a negligence cause of action, namely: (1) a *duty* owed by the doctor to the patient; (2) a *breach* of that duty; (3) the breach of duty was the *proximate*

8. After the trial court granted Defendants Abington Hospital/Gwynedd Medical Center a *non pros* for Plaintiffs' failure to file a certificate of merit against them, the Thierfelders filed a second action, identical to their original action. These two actions were ultimately consolidated by court order on February 25, 2005. After a full hearing, the trial court granted Defendants' preliminary objections and dismissed all but Plaintiffs' claims for intentional infliction of emotional distress and battery. When Plaintiffs voluntarily dismissed these two claims with prejudice the order became final. *See* Pa.R.A.P. 341(b) (order is final when it disposes of all claims and of all parties). Thus, this appeal is properly before us. preclude Wife's claim of professional malpractice against Dr. Wolfert. Trial Court Opinion, at 7.

*cause,* or *substantial factor* in bringing about the harm suffered by the patient; and (4) *damages* suffered by the patient resulting directly from that harm. *Gregorio v. Zeluck,* 451 Pa.Super. 154, 678 A.2d 810 (Pa.Super.1996) (emphasis added). In order to meet this burden, the plaintiff is required to provide expert testimony to establish, to a reasonable degree of medical certainty, that the acts of the physician deviated from acceptable medical standards, and that such deviation was the proximate cause of the harm suffered. *Id.*

 (a) Physician's Duty of Care to Patient and *Althaus v. Cohen,* 562 Pa. 547, 756 A.2d 1166 (2000).

¶ 12 Here, the trial court concluded that a general practitioner, such as Dr. Wolfert, does not breach a duty to his patient by having a sexual affair with that patient while under the physician's care. The concept of duty has been discussed by our Supreme Court in *Althaus v. Cohen,* 562 Pa. 547, 756 A.2d 1166 (2000). The existence of a duty is a question of law for the court to decide. *R.W. v. Manzek,* 585 Pa. 335, 888 A.2d 740 (2005). In *Althaus, supra,* the Supreme Court stated that the determination of whether a duty exists in such a case involves weighing the following factors:

 (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

756 A.2d at 553.

¶ 13 It is undisputed that a healthcare provider's conduct serves a legitimate public interest. Because of a patient's often inferior knowledge about medicine and related conditions, a healthcare professional often has a position of superiority over his client. As such, it is very common that the patient is in a vulnerable position and as a result puts a high degree of trust in his or her doctor. In such relationships where the players are on unequal playing fields, it is even more incumbent upon our legal system to protect patients from the malfeasance of medical professionals when they become sexually involved with their trusting patients.[9]

## 2. The *Long* Decision

¶ 14 In *Long,* the Plaintiffs, husband and wife, were both patients of the defendant doctor, a family physician. After finding out that Wife was having an extramarital affair with defendant, Husband filed a lawsuit against the doctor claiming that that the doctor was negligent because he failed to disclose to him at a scheduled office visit that he was having a sexual relationship with Wife. In his complaint, Husband alleged medical malpractice and loss of consortium, and he also sought punitive damages. Husband ultimately withdrew the consortium claim and the trial court struck the punitive damages claim; the case proceeded to discovery. Husband produced a board-certified psychiatrist who indicated that he would testify that Defendant doctor's actions "did not comport with the standards of a general physician." *Id.* at 526. Prior to trial, the Defendant doctor filed a motion to dismiss claiming that Husband failed to present any cognizable

---

**9.** We need not speak to the elements of breach, causation and damage. Here, the trial court dismissed the Thierfelders' complaint based on the fact that Dr. Wolfert did not have a duty to refrain from having a sexual relationship with his patients. Thus, we reverse the trial court's determination of no duty on the facts as pled in the complaint and remand for trial where the plaintiffs have the burden to prove the now recognized cause of action in medical malpractice based upon the dictates of this decision.

claims. The court ultimately ruled in favor of Defendant doctor on his motion, concluding that Husband "had not pleaded adequately any claim entitling him to relief." *Id.*

¶ 15 On appeal to this Court, the Husband in *Long* raised, among other issues, the query of whether the Commonwealth should recognize a cause of action in medical malpractice when a physician harms his patient [Husband] by having a sexual relationship with the patient's spouse [Wife] who also happens to be the physician's patient. *Id.* at 527.

¶ 16 In addition to finding that Husband had no cognizable cause of action in *Long* based upon Wife's extramarital affair with the defendant doctor, the trial court in *Long* also held that: (1) plaintiff's expert was not qualified under Medical Care Availability and Reduction of Error (MCARE) Act [10] to give his opinion because he (psychiatrist) did not practice in the defendant's (family physician) subspecialty nor was certified by the same or similar approved medical board; and (2) Husband failed to raise appropriate claims. *Long v. Ostroff*, 63 Pa. D. & C.4th 444, 448 (Phila.County 2003).

### 3. Application of *Long* to the present case

#### (a) Risk of Foreseeable Harm

¶ 17 To the extent that the holding of *Long* forecloses Mr. Thierfelder (Husband)

from pursuing a medical malpractice claim against Dr. Wolfert in the present case, we do not believe that the holding in that case should be extended to automatically extinguish Wife's cause of action for malpractice against Dr. Wolfert.[11]

¶ 18 We do so for the following reason. The *Long* Court did not hold that the patient having the affair was foreclosed from suing defendant doctor for malpractice; any such implication would be mere *dicta*. Rather, the central focus of the harm caused by Defendant's claimed negligence in *Long* was to that of the *Husband*, not the *Wife*. This is a critical distinction between *Long* and the facts of the present case for the reason that the risk of foreseeable harm is much greater in cases where the plaintiff is the actual person with whom the doctor is having an affair.[12] To put it simply, the allegations of the complaint are that Dr. Wolfert's actions in conducting the affair negatively affected Wife's treatment or condition.

#### (b) General Practitioner versus Specialists

■ ¶ 19 We also note that *Long* significantly relies on *Mazza v. Huffaker*, 61 N.C.App. 170, 300 S.E.2d 833, (1983). In *Mazza*, the appellate court noted the significant duty of psychiatrists to maintain their patients' trust. Instantly, we believe

---

10. 40 Pa.C.S.A. §§ 1303.101–1303.910.

11. Notably, the distinguished Judge Justin Johnson of our Court, who authored the *Long* opinion, stated that "under the facts of this case ... a general practitioner's duty of care does not prohibit an extramarital affair with a patient's spouse." *Long*, 854 A.2d at 526 (emphasis added). Thus, our Court in *Long* was careful to limit the application of its holding presumably in an effort to avoid it being inappropriately extended as it has been done by the trial court in this case. We caution courts to be cognizant of the intended

limitations of holdings and the danger that can result from applying *dicta* in future cases before them.

12. The Husband in *Long* was being treated by defendant doctor for chest and back pain and anxiety. Although the doctor in *Long* did prescribe anti-anxiety medication for Husband because of marital issues, the doctor did not center his treatment around this condition, but instead referred the Husband to a mental health professional.

that there should be no reason to distinguish general practitioners from psychiatrists when those general practitioners are treating their patients' psychological problems/conditions. In both cases the physicians need to maintain the same trust *when rendering psychological care.*

¶ 20 Moreover, as it is alleged that Dr. Wolfert, a general practitioner, was rendering psychological care, it does not matter that he is not a specialized psychiatrist or psychologist. It is not appropriate to make a distinction between the two classes of physicians when they are rendering the same care. The risk of harm is different when a physician is rendering psychological care rather than treating for some other symptom. If Wife had simply alleged that she had been treated by Dr. Wolfert for a non-emotional condition such as arthritis, we might not find that Wife would have a viable cause of action against him. It well could be that under those circumstances a subsequent, intervening sexual relationship would have had no effect on her arthritic condition—thus establishing no causal connection for malpractice. *Compare Mindt v. Winchester,* 151 Or.App. 340, 948 P.2d 334 (1997) (where doctor's relationship with plaintiff/patient's wife did not affect plaintiff's treatment or condition for male infertility, there was no cause of action for medical malpractice); *Odegard v. Finne,* 500 N.W.2d 140 (Minn. App.1993) (where defendant doctor was treating plaintiff-patient for ulcerative colitis and initiated sexual affair with her, medical malpractice claim was not cognizable).

¶ 21 However, in this case, it has been pled that Wife was being treated for emotional and psychological vulnerabilities. The allegation that the sexual relationship between her and her doctor intensified the nature of her condition compels our result today.

### Conclusion

■ ¶ 22 Therefore, taking the facts pled in the Thierfelders' complaint as true, *Sullivan, supra,* we hold that when a physician is providing specific treatment for psychological problems, and has a sexual relationship with the patient, if that sexual relationship directly causes the patient's psychological/emotional symptoms to worsen, that patient has potentially stated a cognizable cause of action for malpractice. These doctors need not be specialists in psychological care, but merely must be medically licensed to treat patients for such conditions. We note that in this case it is claimed that Dr. Wolfert was *actively treating* the patient for *those issues,* and not merely cognizant of them.[13] As such, the trial court erred in granting Defendants' preliminary objections. *See Vulcan v. United of Omaha Life Ins. Co.,* 715 A.2d 1169 (Pa.Super.1998) (only where law says with certainty that no recovery is possible under facts in amended complaint may preliminary objections in nature of demurrer be granted).

¶ 23 Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

¶ 24 LALLY–GREEN, J., files a Dissenting Opinion, in which ORIE MELVIN and SHOGAN, JJ., join.

13. While not binding on courts, we do recognize the fact that it is clearly unprofessional and unethical under the rules promulgated by professional medical associations or ethics boards for a physician to have sexual relations with a patient while treating that patient. *See* 49 Pa.Code § 16.61 (citing unprofessional and immoral conduct of physician as subject to disciplinary action by state board of medicine); *see also* 49 Pa.Code § 16.110 (citing sexual exploitation by Board-regulated practitioner of current or former patient as unprofessional conduct that is prohibited and subjects practitioner to disciplinary action).

DISSENTING OPINION BY LALLY-GREEN, J.:

¶ 1 I respectfully dissent. Initially, I note that as an intermediate appellate court, we should be reluctant to expand tort liability in the absence of clear guidance from our Supreme Court or the Legislature. *See Excavation Techs. v. Columbia Gas Co.*, 936 A.2d 111 (Pa.Super.2007), *appeal granted,* 597 Pa. 63, 950 A.2d 267 (Pa.2008).

¶ 2 Our Supreme Court has not spoken directly on this important issue. I would predict, however, that the high Court would decline to impose tort liability based on its opinion in *Physicians Ins. Co. v. Pistone,* 555 Pa. 616, 726 A.2d 339 (1999).

¶ 3 *Pistone* arose in the insurance context. In that case, the defendant physician treated a woman for gallstones. In the course of an examination, he "fondled her breasts, exposed his genitals and masturbated in front of her." *Id.* at 340. The question was whether the physician's acts were covered by a policy insuring against "injury arising out of the rendering of or failure to render professional health care services[.]" *Id.* The Court "granted allowance of appeal to determine when conduct constitutes the rendering of professional health care services." *Id.*

¶ 4 The Court ultimately adopted a narrow test that "looks to whether the act that caused the alleged harm is a medical skill associated with specialized training." *Id.* at 344. In doing so, the Court considered but expressly rejected two broader tests. First, the Court rejected a test that would look to whether there was a "substantial nexus" between the doctor's act and his role as a care provider. The Court also rejected a test that would consider whether the harmful act was "intertwined with and inseparable from" his role as a care provider. *Id.* The Court concluded that no coverage was available because the physician's assault did not constitute a "medical skill associated with specialized training." *See id.* at 344.

¶ 5 *Pistone* is instructive. Here, Appellant Joanne Thierfelder ("Wife") couches her negligence claim expressly in terms of medical malpractice. She claims that Dr. Wolfert's actions fell below the standard of care for general practitioners because he engaged in a consensual affair with her. In my view, these allegations do not meet the narrow test of *Pistone.* Wife does not claim that Dr. Wolfert proposed sexual relations as part of his treatment of her medical needs. Rather, she simply alleges that Dr. Wolfert abused his position of power and took advantage of her vulnerable state in order to carry on the affair with her. She also alleges that Dr. Wolfert distorted the doctor-patient relationship in order to satisfy his own needs, to the detriment of the needs of his patient.

¶ 6 While those allegations may conceivably fit within the "substantial nexus" test or the "inseparable and intertwined" test, our Supreme Court rejected both of those tests in *Pistone.* Following *Pistone,* I would hold that a consensual, non-medical sexual affair between doctor and patient does not constitute the rendering of a "medical skill associated with specialized training." *See also Smith v. Friends Hosp.,* 928 A.2d 1072, 1076 (Pa.Super.2007) ("a complaint sounds in medical malpractice where the conduct at issue constitutes an integral part of the process of rendering medical treatment, and where the complaint alleges that the injury caused to the patient occurred during, and as a direct result of the performance of professional services.") (internal quotations omitted).

Thus, I would hold that Dr. Wolfert's actions, while unethical, do not constitute medical malpractice.

¶ 7 In the instant case, the Majority announces for the first time [1] that any physician, whether a specialist or not, has a duty to refrain from a sexual affair with his patient, so long as: (1) the physician is treating the patient for an "emotional condition" or "psychological problems"; and (2) the patient alleges that the affair worsened the psychological condition. Majority Opinion at 368. While I do not doubt the good intentions of this new and somewhat vaguely formulated expansion of tort liability, I believe that it runs contrary to guiding Supreme Court precedent.[2] The high Court is, of course, free to revisit its precedent and to expand the rule in its wisdom.[3] At present, however, I would affirm the trial court's decision to dismiss Wife's claims as a matter of law. Because the Majority takes a contrary course, I respectfully dissent.

¶ 8 ORIE MELVIN and SHOGAN, JJ., join.

---

1. In *Pistone,* our Supreme Court alluded to out-of-state cases holding that a psychiatrist has a special duty of care to refrain from having an affair with his patient because of the abuse of the transference phenomenon. *Pistone,* 726 A.2d at 343 n. 3. The *Pistone* Court did not expressly adopt such a holding. Similarly, in *Long v. Ostroff,* 854 A.2d 524, 528 (Pa.Super.2004), *appeal denied,* 582 Pa. 700, 871 A.2d 192 (2005), this Court simply noted that out-of-state cases imposing such tort liability on psychiatrists are "not binding."

 In *Long,* this Court held that a general practitioner does not have a duty of care to refrain from having a sexual affair with the patient's **spouse.** I agree with the Majority that *Long* does not control the instant case. However, *dicta* in that case does strengthen Dr. Wolfert's position. *See id.* ("the *Mazza* decision, with its countless references to a **psychiatrist's** special duty, does not extend to general practitioners.")

2. The Majority engages in a generalized duty of care analysis pursuant to *Althaus v. Cohen,* 562 Pa. 547, 756 A.2d 1166 (2000). While it is appropriate to do so, we must pay particular attention to the fact that medical malpractice issues (and their insurance ramifications) are increasingly the province of specialized rules promulgated by the Legislature and our Supreme Court.

3. Wife's expert, Dr. Robert L. Perkel, is a board-certified family practice physician and professor of medical ethics who apparently taught Dr. Wolfert in medical school. Dr. Perkel is of the strong view that any sexual relationship between a doctor and a current patient is a fundamental violation of the doctor's duty of care to the patient, regardless of whether the doctor is treating the patient for emotional or psychological problems. R.R. 354a. Thus, Dr. Perkel would propose a rule even more far-reaching than that of the Majority.