J-S16002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: K.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1849 MDA 2024 |

Appeal from the Decree Entered November 26, 2024
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 45-ADOPT-2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF: B.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1850 MDA 2024 |

Appeal from the Decree Entered November 26, 2024
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 046-ADOPT-2024

BEFORE: LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED: AUGUST 21, 2025**

S.L. (Mother) appeals from the decrees, entered in the Court of Common Pleas of Cumberland County, Orphans' Court Division, involuntarily terminating her parental rights to her children,[1] K.G. (born 05/2019) and B.R.

---

[1] Mother's parental rights to two of her three other children have previously been terminated in a separate, unrelated action.

(born 09/2023) (collectively, Children).[2]  Counsel has filed a motion to withdraw and an accompanying **Anders**[3] brief.  After careful review, we affirm the involuntary termination of S.L.'s parental rights[4] based on the opinion authored by the Honorable Carrie E. Hyams and grant counsel's motion to withdraw.

In May 2020, Cumberland County Children and Youth Services (CYS) received a general protective services (GPS) report for K.G., who was one year old at the time, regarding Mother's homelessness, mental health issues, drug and alcohol concerns, and concerns regarding her ability to supervise her children.  The report alleged that Mother was not properly supervising K.G., who was crawling around on the balcony of a hotel room.  In the summer of 2020, CYS received an additional GPS report alleging domestic violence

---

[2] On January 14, 2025, our Court sua sponte consolidated these appeals at 1849 MDA 2024 and 1850 MDA 2024 because they involve related parties and issues.  **See** Pa.R.A.P. 513.

[3] **Anders v. California**, 386 U.S. 738 (1967).  **See also Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009); **In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending **Anders** to appeals from decrees of involuntary termination of parental rights); **In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (explaining that the **Anders** procedure for withdrawal of court-appointed counsel has been extended to appeals involving termination of parental rights).

[4] At the November 26, 2024 proceeding where Mother's rights to K.G. were involuntarily terminated, T.G., K.G.'s presumptive legal father, voluntarily consented to K.G.'s adoption.  **See** N.T. Termination Hearing, 11/26/24, at 7-10.  J.H., K.G.'s biological father, did not appear at the hearing, but his prior consent to K.G.'s adoption was confirmed.  **See id.** at 10-13.  B.R.'s father's parental rights were also involuntary terminated at the November 26, 2024 proceeding.  None of Children's fathers are involved in this appeal.

between Mother and her then-paramour, as well as concerns for Mother's mental health and substance abuse.

K.G. was adjudicated dependent on January 14, 2021. CYS set forth the following family service plan objectives for Mother: (1) obtain and maintain stable housing; (2) attend all medical/dental appoints for K.G.; (3) complete a mental health evaluation and follow through with any/all recommendations; (4) complete a parenting evaluation and follow through with any/all recommendations; and (5) visit with K.G. at Alternative Behavior Consultants (ABC) on a regular basis. *See* Service Plan, 1/12/21. Mother was also providing drug screens as part of her services. *See* Service Plan, 6/15/21.

On July 7, 2021, the court held a permanency review hearing where it determined Mother had moderately complied with the permanency plan but noted that, during visitation sessions, she repeatedly demonstrated a lack of appropriate supervision, which it considered relevant in light of the initial reason for the family's referral, and missed four random drug screens. At a permanency review hearing held on January 20, 2022, the court noted that there had been a recent domestic violence incident between Mother and her then-paramour, J.R., and also noted Mother's failure to participate in drug screening without a reasonable explanation.

On August 16, 2022, the court returned physical and legal custody of K.G. to Mother. Prior to hearing in August of 2023, Mother lost her housing and moved into a shelter with K.G. B.R. was born in September of 2023 and

tested positive for marijuana at birth. As a result, B.R. was transferred to UPMC Harrisburg due to her specialized medical needs. The hospital was unable to discharge B.R. to Mother because Mother's plan was to have B.R. live with her and eight other individuals in a two-bedroom apartment. At the time, B.R. was considered medically needy and fed through a tube. On January 2, 2024, CYS obtained a verbal order granting CYS physical and legal custody to B.R. and for B.R. to be placed in foster care. B.R. was discharged from the hospital on January 5, 2024, and she has been residing with the same foster family since then.

At a permanency review hearing on January 31, 2024, the court ordered that K.G. be placed in the legal and physical custody of CYS and be placed in an emergency kinship home. The court noted that Mother had not secured stable and appropriate housing since being asked to leave the shelter where she had been residing since the fall of 2023. The court also found that Mother had not been forthcoming with CYS regarding her housing situation and would not sign the releases necessary for CYS to obtain information regarding her residence.

On November 7, 2024, CYS filed petitions for the involuntary termination of Mother's parental rights to Children on the basis of sections 2511(a)(1), (2), (5), and (b) of the Adoption Act.[5] On November 26, 2024, the court held a termination hearing. At the hearing, Korin Hays, previously

---

[5] 23 Pa.C.S.A. §§ 2101-2938.

a caseworker for CYS, testified that she took over Children's dependency case in February of 2024. She stated that, when she took over the case, "there was a big push for reunification" with Mother and Children. N.T. Termination Hearing, 11/26/24, at 73. Hays testified she learned that Mother had been arrested for retail theft the weekend of March 29, 2024, while Children were staying with her for an overnight weekend visit. While Mother was detained, Children were left without proper supervision. CYS ended Mother's unsupervised visitation following her arrest.

Hays testified that Mother did not have consistent employment from February of 2024, when Hays began working with the family until October 17, 2024, when Hays left CYS. During Hays' tenure, Mother never consistently attended doctors' visits for K.G, was inconsistent in participating in weekly phone calls with K.G., and never achieved the requisite three months stability to proceed with parenting services through ABC. Hays also testified that B.R. had returned from unsupervised visits several times with a strong odor of marijuana and cigarettes on her clothing, on the car seats, and on her person. Hays said that this concern was discussed with Mother and B.R.'s father, who denied smoking during unsupervised visitation with B.R. Prior to the end of Hays' time working with the family, Mother was also behind on rent and facing eviction.

When reviewing Mother's objectives, Hays described Mother's cooperation as lacking because of Mother's consistent lying. Mother was not consistently meeting Children's medical, dental, or educational needs, and

Mother never signed releases for CYS to obtain Mother's mental health records in order to assess her progress with counseling.

Prior to addressing the merits of Mother's appeal, we must determine whether counsel has complied with the dictates of **Anders** and its progeny in his request to withdraw from representation.[6]   **See Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (this Court may not review merit of underlying issues without first examining counsel's request to withdraw).   Court-appointed counsel seeking to withdraw from representation on the basis that the appeal is frivolous must:

> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the [**Anders**] brief to the [appellant]; and (3) advise the [appellant] that [] she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**In re B.G.S.**, 240 A.3d 658, 661 (Pa. Super. 2020) (citation omitted).

Additionally, the Pennsylvania Supreme Court has explained that a proper **Anders** brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

---

[6] **See In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992) (extending **Anders** briefing requirements to termination of parental rights appeals involving indigent parents represented by court-appointed counsel).

*Santiago*, 978 A.2d 361. Finally, this Court must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Here, our review of counsel's *Anders* brief and application to withdraw reveals that counsel has complied with each of the technical requirements of *Anders* and *Santiago*. Counsel states that he has conducted a conscientious examination of the record, determined that further pursuit of a direct appeal would be frivolous, and furnished a copy of the letter sent to Mother advising her of her right to retain new counsel, proceed *pro se*, or raise issues in response to the brief.[7] *See Goodwin*, *supra*. Additionally, counsel's *Anders* brief complies with the requirements of *Santiago*. Accordingly, we conclude that counsel has substantially complied with the requirements for withdrawing from representation and proceed with an independent review of the merits. *See Flowers*, *supra*.

In his *Anders* brief, counsel raises the following issues for our consideration:

> (1) Whether the [t]rial [c]ourt abused its discretion and committed an error of law when it found that sufficient grounds existed for a termination of [Mother]'s parental rights to [C]hildren, despite a lack of clear and convincing evidence, thus contravening section 2511(a) of the Adoption Act[.]

_____

[7] Mother has not filed a response to counsel's *Anders* brief.

(2)     Whether the [t]rial [c]ourt abused its discretion and committed an error of law in terminating [Mother]'s parental rights when the conditions which led to the removal or placement of the children no longer existed or were substantially eliminated, thus contravening [sub]sections 2511(a) and (b) of the Adoption Act[.]

(3)     Whether the [t]rial [c]ourt abused its discretion and committed an error of law in determining it would be in the [Children]'s best interest[s] to have parental rights terminated, when [Mother], if given sufficient time, would be ready, willing, and able to parent [Children] and provide for their needs, thus contravening [s]ection 2511(b) of the Adoption Act[.]

Appellant's Brief, at 4-5.

Our standard of review of this matter is well-settled:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re L.W.*, 267 A.3d 517, 522 n.4 (Pa. Super. 2021) (citation omitted).

Subsections 2511(a) and (b) of the Adoption Act set forth the grounds a petitioner must prove in order for the court to grant an involuntary termination of parental rights. *See* 23 Pa.C.S.[A] § 2511. Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination . . . If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in [s]ubsection 2511(a), the court must then consider whether termination would best serve "the developmental, physical and emotional needs and welfare of the child" under [s]ubsection 2511(b).

- 8 -

*In re Adoption of C.M.*, 255 A.3d 343, 359 (Pa. 2021).  Under subsection 2511(b), "the child's 'emotional needs' and 'welfare' include 'intangibles such as love, comfort, security, and stability.'" *In the Int. of K.T.*, 296 A.3d 1085, 1106 (Pa. 2023) (citation omitted).

"To determine whether the petitioning party has met [its] burden [under subsection 2511(b)], the court must conduct a[n] analysis focused on the child."  *Id.* at 1114 (citation omitted).  "The court must not truncate its analysis and preclude severance based solely on evidence of an 'adverse' or 'detrimental' impact to the child."  *Id.*  "Therefore, to grant termination when a parental bond exists, there must be clear and convincing evidence that the bond is not necessary and beneficial."  *Id.*[8]

After a careful review of the record, the briefs on appeal, and the relevant case law, we conclude that CYS presented clear and convincing evidence to terminate Mother's parental rights under subsections 2511(a)(1), (2), (5), and (b) and, therefore, we find no abuse of discretion.  *L.W.*, *supra*. We affirm on the basis of the opinion authored by the Honorable Carrie E. Hyams.  *See* Trial Court Opinion,[9] 2/12/25, at 7-9 (discussing termination under subsections 2511(a)(2), (5), and (b)).  As noted by the trial court,

---

[8] We need only agree with the orphans' court as to any one subsection of [s]ection 2511(a), as well as [s]ection 2511(b), in order to affirm.  *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

[9] The trial court entered separate opinions for K.G. and B.R. at their respective dockets.  As the opinions are primarily duplicative, we cite to the opinion on K.G.'s docket at 1849 MDA 2024.

Mother has failed to show a "consistent ability to provide longstanding stable care for [Children,]" which has resulted in B.R. spending the entirety of her life in foster care and K.G. spending over two years in foster care across seven different homes. *See id.* at 5, 7 (unpaginated). This lack of stability is exemplified by Mother's criminal acts while Children were in her care, B.R., a medically needy child, coming back from unsupervised visits smelling like marijuana and cigarette smoke, and Mother's inability to maintain appropriate housing. Mother's ongoing instability and lack of progress have demonstrated her lack of protective capacity and inability to parent Children. *See* N.T. Termination Hearing, 11/26/24, at 26-28 (Mother unable to begin parent education services because she never demonstrated requisite three months of stability); *id.* at 29 (Mother's visitation through ABC terminated because Mother "had a consistent continuous caustic relationship with the agency and the providers of service"); *id.* at 64 (Mother's goals—housing, employment, parenting skills, drug and alcohol services—have been the same since K.G. was adjudicated dependent); *id.* at 76-77 (Mother's arrest at Walmart for retail theft); *id.* at 95-96 (B.R. coming back from unsupervised visits with "a very strong odor of marijuana and cigarette smell on her clothing, on the car seats, and on her person").

Furthermore, Children are now both stable and doing well physically, emotionally, and developmentally in their respective foster homes. K.G. has expressed that he is comfortable in his current foster home and would like to remain there moving forward. *See id.* at 50, 52-53. He is bonded to, has

been making progress with, and feels a part of his foster family. *See id.* at 100-01, 104. Regarding K.G.'s bond to his Mother, in September of 2024, K.G. expressed to Shannon Snyder, his counselor, that he no longer wanted Mother to take part in his counseling sessions and expressed "a lot of worry and fear following sessions" with Mother. *Id.* at 51. As for B.R., she has been with the same foster family since being discharged from the hospital following birth, has been making good progress medically, and is bonded to her foster family. *See id.* at 110-11, 117. Therefore, we agree with the trial court that termination of Mother's parental rights is in Children's best interests. *See* 23. Pa.C.S.A. § 2511(b). We instruct the parties to attach a copy of the trial court's opinions in the event of further proceedings in this matter.

Decrees affirmed. Motion to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/21/2025

IN RE: ADOPTION OF B.R., a minor

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
:
: 1850 MDA 2024
:
: No. 46 ADOPTION 2024
:
: DOB: 09/03/2023

## IN RE: 1925(a) OPINION

*HYAMS J. 22, January 2025*

### PROCEDURAL HISTORY

Mother, S L , timely appeals the November 26, 2024 Order terminating her parental rights to her daughter, B. R ., (henceforth B.R.), entered at 46 ADOPTION 2024. On September , 2023, the same day that B.R. was born, Cumberland County Children and Youth Services (henceforth CCCYS), received a referral that B.R.'s cord stat was positive for cannabinoids due to prenatal maternal use, and Mother had admitted to using marijuana during her pregnancy. CCCYS was already open with Mother related to two of her older children and had been working with Mother concerning unstable housing, school issues and parenting concerns. B.R. remained hospitalized in the NICU until early January 2024 due to her necrotize-enterocolitis diagnosis, which required multiple surgeries. The hospital reported concerns related to Mother's inability to be properly trained to address B.R.'s medical needs and the fact that Mother and B.R.'s Father[1] lived in a homeless shelter. As a result of Mother's

---

[1] The parental rights of B.R.'s Father, J.R., were involuntarily terminated by way of separate order on November 26, 2024. J.R. did not file a timely appeal to the Final Decree terminating his parental rights to B.R.

inability to present safe[2] and stable housing for B.R. to reside in upon hospital discharge, as well as concerns reported by the hospital related to Mother's interactions with B.R. while in the NICU and interactions with hospital staff, CCCYS sought a verbal order for emergency protective custody of B.R. on January 2, 2024 as she was ready for discharge. On January 2, 2024, the undersigned provided CCCYS emergency protective custody of B.R. for the purposes of having her placed in the Bair Foundation foster home of S. and T. W. The undersigned issued a signed Order on January 3, 2024 , but dated January 2, 2024, confirming the verbal order provided on January 2, 2024. The shelter care hearing was held on January 2, 2024 before the Juvenile Hearing Officer. Following the shelter care hearing, it was ordered that B.R. remain in the legal and physical custody of CCCYS for continued placement in the foster home. On December 23, 2023, CCCYS filed a dependency petition alleging that B.R. was without proper parental care, control, and supervision placing her health, safety, and welfare at risk as there were ongoing concerns regarding B.R.'s Mother and Father related to substance use, inappropriate discipline, domestic violence, homelessness and inadequate supervision of children. At the time of the shelter care hearing on January 2, 2024, B.R. remained hospitalized and her medical needs were significant, and the parents were unable to articulate a verifiable plan for B.R. and meeting her increased medical needs upon discharge from the hospital. The verbal order for emergency protective custody was ratified and confirmed in the recommendations of Hearing Officer Lawrence.

An adjudicatory hearing along with disposition was held on January 12, 2024 before the undersigned. Mother and Father were unable to demonstrate that they had adequate housing that would meet B.R. unique needs and they stipulated to dependency. Following this hearing, it was

---

[2] The hospital staff did not approve the shelter as an appropriate living environment for B.R. due to her significant medical needs and the specialty care she required for those medical needs to be met.

determined that B.R. was a dependent child based upon clear and convincing evidence and she was to remain placed in the legal and physical custody of CCCYS in the foster home.

A permanency plan was developed for Mother on February 1, 2024 and subsequently revised on May 2, 2024; and October 14, 2024.[3] Mother was ordered to address housing needs, address employment needs, cooperate with CCCYS, address B.R.'s developmental needs, address mental health needs, address drug and alcohol concerns and address parenting concerns.[4]

On November 7, 2024, CCCYS petitioned for the involuntary termination of Mother's parental rights to B.R. and her sibling K.G. A hearing on the petition was scheduled and held on November 26, 2024. An Order involuntarily terminating Mother's parental rights was entered on November 26, 2024. A timely notice of appeal was filed with the simultaneous filing of the following statement of errors complained of on appeal:

1. This Honorable Court erred as a matter of law and abused its discretion when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for termination of Appellant's parental rights to her child, thus contravening section 2511(a) of the Adoption Act, 23 Pa.C.S.A. § 2511 (a).

2. This Honorable Court erred as a matter of law and abused its discretion when in terminating Appellant's parental rights when the conditions which led to the removal or placement of the child no longer existed or were substantially eliminated, thus contravening sections 2511(a) and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a),(b).

3. This Honorable Court erred as a matter of law and abused its discretion in determining the best interest of the child would be served by terminating parental rights when Appellant, if given sufficient time, would be ready, willing, and able to parent the child

---

[3] Child's Permanency Plans, CYS #6 OC.
[4] *Id.*

and provide for her needs, thus contravening section 2511(b) of the Adoption Act, 23

Pa.C.S.A. § 2511(a), (b).[5]

This Opinion is in support of the decision to involuntarily terminate Mother's parental

rights.

## FINDINGS OF FACT

The following findings of fact are made upon review of the hearing transcripts, filings of

record, and the trial court's notes.

1. Cindy Martin, Esquire was appointed as legal counsel to represent B.R. in this TPR matter.

2. Tammi Blackburn, Esquire was also appointed as GAL to represent B.R. in this TPR matter.

3. Tammi Blackburn, Esquire had previously been appointed by the dependency court as a GAL for B.R.; and at the time of Attorneys Martin and Blackburn's appointments in this TPR matter, a determination was made that the best interests of the children, particularly B.R.'s older sibling, K.R. may be in conflict, and therefore, a GAL and separate legal counsel were appointed for the children in this TPR matter.

4. The child, B.R., (DOB: 09/ /2023) currently resides in the W⸳ foster home.

5. B.R. is 14 months old and she has lived her entire life in out of home care, meaning outside the home of her parents, and, fortunately for her, other than the time she was hospitalized at birth, she has remained in the same foster home her entire life.

6. Despite a multitude of professional service assistance, community, and church assistance, Mother has been unable to demonstrate the necessary consistent level of stability with regard to maintaining employment, maintaining her finances and avoiding involvement in the criminal justice system in an effective manner such that it is focused on basic necessities, as well as consistent rent and utility payment that would prevent housing instability.

7. Despite a multitude of professional service assistance, community and church assistance, Mother has been unable to demonstrate an ability to meet the basic needs of B.R. Her inability to demonstrate this includes, but is not limited to, a failure to consistently attend medical, developmental, and dental appointments of B.R., a failure to consistently attend educational meetings or like appointments, a failure to demonstrate safe decision making

---

[5] Statement of Errors Complained of on Appeal, filed December 23, 2024.

during unsupervised visitation (examples of this include engaging in criminal activity during visits and leaving B.R. in the care of persons not deemed safe to provide care of B.R.), and a failure to demonstrate appropriate behavior and parenting during supervised visitation.

8. Mother's visits through the ABC parenting program were not positive with respect to Mother's inability to demonstrate appropriate behavior towards ABC staff and follow the rules and policies of the program. Ultimately Mother was no longer permitted to have her visits held through ABC's parenting program as a result of her continued defiance of the rules and her disrespectful behavior and angry outbursts.

9. Despite a multitude of professional service assistance, community and church assistance, Mother was on the verge of being evicted from her current housing on November 26, 2024 and any testimony to the contrary was not credible based on the multitude of evidence presented that eviction is unavoidable if not imminent.

10. A negative inference is taken from the fact that the only witnesses Mother suggested would contradict the multitude of testimony and evidence that the eviction is unavoidable were not present in court today nor did she provide any written documentation from those witnesses.

11. The Mother acknowledged that she had not demonstrated 3 months of stability in the specific court ordered goals that would have allowed for her to work with ABC on necessary parenting and visitation skills so that reunification could potentially occur.

12. The Mother was no closer to reunification on November 26, 2024 than she was at the time B.R. was placed into Agency custody.

13. B.R. is in a safe and stable home where her individual needs are being met and she is loved and adored by all her foster family members. This home is a permanent resource for her.

## DISCUSSION

*Statement of law:* Termination of parental rights is controlled by statute.[6] In relevant part, the statute provides as follows:

> Grounds for involuntary termination
> (a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds: ...

---

[6] *See* 23 Pa.C.S. § 2511.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. ...

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child. ...

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

(b) Other considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection ... (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.[7]

"The focus of involuntary termination proceedings is on the conduct of the parent(s)."[8]

Our appellate courts have determined that:

[a] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the parent's failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his

---

[7] *Id.* at a(2), (5), (8) and (b).

[8] *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001)(internal citation omitted).

or her potential in a permanent, healthy, safe environment. When reasonable efforts to reunite a foster child with his or her biological parents have failed, then the child welfare agency must work toward terminating parental rights and placing the child with adoptive parents.[9]

*Application of law to facts:*

Mother has not shown an ability to care for B.R. at any time since her birth. Mother has never provided for B.R.'s daily needs and has not had any significant level of contact with B.R. during her 15 months of life. When Mother was provided unsupervised visits, they were swiftly terminated because of poor insight and judgment as well as a demonstration of concerning parenting skills. (Mother was arrested during a visit and the Father left B.R. in the care of persons who were not trained to address her significant medical needs to pick up the Mother from the police station). Mother's criminal acts and behavior towards parenting services demonstrates her poor insight and judgment as well as a lack of commitment to the reunification process. Mother admitted she has been unable to demonstrate stability for a period of three months consistently. Her inability to demonstrate that stability has prevented her from receiving the necessary services for reunification to be achieved, such as parenting services. Her lack of stability continued up to the date of the hearing as she was once again on the verge of losing her housing on the day of the termination hearing. It was apparent that her instability would continue. It has been over fifteen months since B.R.'s birth and placement into Agency custody and yet Mother is not any closer to providing B.R. permanency by way of reunification than she was at the time of placement.

B.R. has been residing in her current foster home since she was discharged from the hospital after her birth. All of her physical, social, and developmental needs have been met by

---

[9]    *In re Adoption of R.J.S.*, 901 A.2d 502, 507 (Pa. Super. 2006)(internal citations and quotations omitted).

the foster parents. This home is a safe and stable environment with dependable caregivers capable of providing her with love and care she needs to promote healthy development.

B.R. has been in the custody of CCCYS for more than twelve months with the conditions which led to her removal continuing to exist. The record is replete with other equally clear and convincing evidence of Mother's incapacity to meet the child's needs and promote her welfare. Previous additional time and opportunities provided to Mother to remedy the reasons for placement will not provide permanency for B.R. in a reasonable amount of time. Therefore, Mother's statement of errors are not supported by the record and overturning the decision to terminate her parental rights is clearly not in the best interest of the child.

For the reasons stated above, the instant appeal should be denied.

BY THE COURT:

Carrie E. Hyams, J.