J-S40013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEOVANNI ANTONETTI-CURET | : | |
| | : | |
| Appellant | : | No. 228 MDA 2025 |

Appeal from the Judgment of Sentence Entered December 17, 2024
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001884-2021

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED: DECEMBER 31, 2025**

Geovanni Antonetti-Curet appeals from the judgment of sentence, entered in the Court of Common Pleas of Cumberland County, after a jury convicted him of simple assault[1] and the trial court convicted him of disorderly conduct.[2] Counsel has filed a motion to withdraw and an accompanying **Anders**[3] brief. After our review, we affirm Antonetti-Curet's judgment of sentence and grant counsel's motion to withdraw.

---

[1] 18 Pa.C.S.A. § 2701(a)(1).

[2] **Id.** at 5503(a)(4).

[3] **Anders v. California**, 386 U.S. 738 (1967). **See also Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

The trial court set forth the factual and procedural history of this matter as follows:

> On July 26, 2021, at approximately 1:15 a.m., Officer Ronald Hoover of the Carlisle Borough Police Department was contacted in response to a reported assault at the Carroll Mart gas station and convenience store located in the borough of Carlisle, Cumberland County, Pennsylvania. Officer Hoover arrived on-scene[,] where he requested backup, and Lieutenant Joshua Bucher responded to that request. After securing the scene and taking [Antonetti-Curet] into custody, the officers spoke with Sarah Cerelli (hereinafter "Victim"), as well as her friend Vanessa Correira,[4] who accompanied [Victim] that evening and witnessed the incident.
>
> Victim testified at trial that she and [] Correira travel[]ed to the Carroll Mart after work, where they encountered [Antonetti-Curet] and another individual having a loud argument inside the store. As they waited in the checkout line, [] Correira made a remark that [Antonetti-Curet] and his friend should take their dispute outside, which instead caused [Antonetti-Curet] to make Victim and [] Correira the focus of his attention. [Antonetti-Curet] followed both women out of the store, and after Victim got into her car, he stood in the doorway so that she could not close her car door.
>
> While doing so, [Antonetti-Curet] continued berating Victim, screaming directly into her face. Victim[] attempted to push [Antonetti-Curet] away so that she could close the car door and leave, which prompted [Antonetti-Curet] to begin striking her in the head with closed fists. As [Antonetti-Curet] began striking Victim, [] Correira contacted Officer Hoover for assistance. Shortly afterward, Officer Hoover arrived on-scene and placed [Antonetti-Curet] under arrest, while Lieutenant Bucher assisted him in securing the scene.
>
> Following [Antonetti-Curet's] arrest, formal charges were filed against him on July 26, 2021, and the criminal information was filed on October 14, 2021.

---

[4] We have corrected the trial court's misspelling of Correira's surname.

Subsequently, between 2022 and 2024, five separate bench warrants were issued in response to [Antonetti-Curet's] failures to appear for his scheduled court dates. Trial in this matter occurred on August 22-23, 2024, following which the jury found [Antonetti-Curet] guilty of simple assault, [and the trial] court found him guilty of summary disorderly conduct and not guilty of summary public drunkenness. On December 17, 2024, th[e trial] court sentenced [Antonetti-Curet] to a standard[-]range sentence of six months to twenty-three months of incarceration, with approximately two months of time credit. A timely post-sentence motion was filed on December 23, 2024, within which [Antonetti-Curet] sought a new trial and contended that the jury's verdict was against the weight of the evidence. After a review of [Antonetti-Curet's] post-sentence motion and the Commonwealth's response thereto, the motion was denied by order of court on January 23, 2025. [Antonetti-Curet] filed his timely notice of appeal on February 21, 2025, and his [Pa.R.A.P. 1925(b)] concise statement of errors complained of on appeal on March 14, 2025, prompting this opinion pursuant to [Rule] 1925(a).

Trial Court Opinion, 4/8/25, at 2-4 (footnotes omitted).

Prior to addressing the merits of Antonetti-Curet's appeal, we must determine whether counsel has complied with the dictates of *Anders* and its progeny in his request to withdraw from representation. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (this Court may not review merits of underlying issues without first examining counsel's request to withdraw). Court-appointed counsel seeking to withdraw from representation on the basis that the appeal is frivolous must:

(1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) file a brief referring to anything that arguably might support the appeal[;] and (3) furnish a copy of the brief to the defendant and advise the defendant of his [] right to retain new counsel or raise any additional points that he [] deems worthy of the court's attention.

*Id.*

Additionally, the Pennsylvania Supreme Court has explained that a proper ***Anders*** brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d 361. Finally, this Court must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Here, our review of counsel's ***Anders*** brief and application to withdraw reveals that counsel has complied with each of the technical requirements of ***Anders*** and ***Santiago***. Counsel states that he has made a conscientious examination of the record, determined that further pursuit of a direct appeal would be frivolous, and furnished a copy of the letter sent to Antonetti-Curet advising him of his right to hire privately retained counsel or proceed *pro se* and raise issues in response to the brief.[5] ***See Goodwin***, ***supra***. Additionally, counsel's ***Anders*** brief complies with the requirements of ***Santiago***. Accordingly, we conclude that counsel has substantially complied with the

---

[5] Antonetti-Curet has not filed a response to counsel's ***Anders*** brief.

requirements for withdrawing from representation and proceed with an independent review of the merits. *See Flowers*, *supra*.

Counsel first raises a claim that the verdict was against the weight of the evidence due to inconsistencies between the trial testimony of the Victim and her friend, Correira, and their statements to police. Specifically, counsel argues that, in her statement to police given only four days after the incident, the Victim stated she was struck three times on the face and head, without mentioning having been hit on her shoulders. *See* Defense Exhibit 1. In contrast, at trial, which occurred approximately three years after the incident, the Victim testified that she was hit on the side of her head, her forehead, the back of her head, and her shoulders but did not know how many blows landed. She also testified that she had bruising on her shoulder and the side of her head, but photographs admitted at trial showed bruising only on her forearm and shoulder. *See* Commonwealth's Exhibits 2 and 3.

Counsel suggests that "[e]yewitness Correira's inconsistency was more stark." *Anders* Brief, at 18. In her statement to police just three days after the incident, Correira stated: "I did not see what had happened between them, but I did see that it appeared he had struck her." *Id.*, citing Defense Exhibit 2. *See also* N.T. Trial, 8/23/24, at 97 (defense counsel reading from Correira's police statement). However, at trial, Correira testified that she "saw [Antonetti-Curet] strike [the Victim]." N.T. Trial, 8/23/24, at 98. Antonetti-Curet is entitled to no relief.

Our standard of review for a challenge to the weight of the evidence is well-settled. The finder of fact is the exclusive judge of the weight of the evidence; it is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. ***See Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003). As an appellate court, we cannot substitute our judgment for that of the finder of fact. ***See id.*** Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. ***See Commonwealth v. Passmore***, 857 A.2d 697, 708 (Pa. Super. 2004).

A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench[.]" ***Commonwealth v. Davidson***, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted).

Furthermore,

> where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Champney***, 832 A.2d at 408 (citation omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence.

- 6 -

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000), citing *Commonwealth v. Farquharson*, 354 A.2d 545 (Pa. 1976). Thus, "the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879–880 (Pa. 2008).

Here, Antonetti-Curet was convicted of simple assault and disorderly conduct. A person commits the offense of simple assault if he "attempts to cause or intentionally, knowingly[,] or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance[,] or alarm, or recklessly creating a risk thereof, he . . . creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." *Id.* at § 5503(a)(4).

The trial court addressed Antonetti-Curet's weight claim as follows:

In this case, Victim testified that [Antonetti-Curet] followed her out of the Carroll Mart, loudly berated her as she walked to her car, loudly continued berating her while she was seated in her car, and then repeatedly struck her with closed fists after she tried to push him away from her and leave the scene. Victim testified that she could not remember how many times [Antonetti-Curet] struck her over an approximately thirty[-]second to one-minute[-]long period. She also testified that she observed Officer Hoover arriving on-scene just after [Antonetti-Curet] ceased battering her.

[Antonetti-Curet's] counsel offered as impeachment evidence Victim's voluntary written statement to the police, made four days after the incident, for the proposition that Victim was inconsistent regarding the number of times that she was struck. In her written statement, Victim stated that she remembered being struck in the head three times before falling back into her car seat. At trial[,]

- 7 -

Victim clarified that [Antonetti-Curet] continued to strike her after she fell back into her car seat. The jury was entitled to consider those statements and weigh their credibility when reaching its verdict.

[Additionally, w]hile the defense argument at trial included the suggestion that Victim lacked credibility because she testified that she was struck exactly five times, we were unable to either remember or to locate any such testimony prior to defense counsel introducing it himself during the cross-examination of Victim and then arguing that point during his closing statement to the jury. Instead, it appeared that Victim clearly testified that she did not count how many times she was struck.

[] Correira testified that [Antonetti-Curet] followed Victim out of the Carroll Mart, and then repeatedly struck her with closed fists. [Antonetti-Curet's] counsel attempted to impeach [] Correira[] by noting the purported inconsistency between when she contacted Officer Hoover and when he arrived on-scene. There was also attempted impeachment regarding the written statement that [] Correira provided the police shortly after the incident, wherein [] Correira indicated that she did not clearly see what had happened between [Antonetti-Curet] and Victim, but that it appeared [Antonetti-Curet] struck Victim. In response, [] Correira testified that the written statement was mistaken in that she clearly saw [Antonetti-Curet] strike Victim with closed fists. The jury was entitled to weigh [] Correira's credibility and determine whether to believe her.

Considering the testimony from Victim and [] Correira, as well as the photographs of the bruises that Victim received following [Antonetti-Curet's] blows, the jury's guilty verdict was not shocking to this court's conscience. Importantly, despite a three-year gap between the underlying assault and the jury trial, both witnesses' testimonies were consistent in establishing that after a verbal altercation inside, [Antonetti-Curet] followed Victim out of the store and then struck her repeatedly. Any minor discrepancies with respect to the exact number of blows struck, whether [] Correira actually saw, or merely inferred based on the presence of bruising[,] that Victim was struck by Appellant, or any discrepancy regarding the exact sequence of events preceding Officer Hoover's arrival on scene, were questions for the jury to resolve. [*See*] ***Commonwealth v. Stokes***, [] 78 A.3d 644, 651 [(Pa. Super. 2013)] ([] minor discrepancies in [] testimony of witnesses are for [] jury to resolve). Based on the testimony and

- 8 -

evidence presented at trial, the jury's conclusion that the weight of the evidence supported the Commonwealth's theory of the case was not shocking to this court's conscience, and did not support the award of a new trial.

Trial Court Opinion, 4/8/25, at 5-8 (reformatted; footnotes and some citations omitted).

Upon review, we can discern no abuse of discretion on the part of the trial court in concluding that the verdict was not against the weight of the evidence presented at trial. As the court noted, trial in this matter occurred three years after the incident forming the basis for the charges. As such, minor discrepancies between statements made at the time of the incident and testimony at trial are perhaps not unexpected. Defense counsel vigorously cross-examined both the Victim and Correira and the resolution of any discrepancies or inconsistencies in the witnesses' testimony was within the province of the fact-finder. **Stokes**, **supra**.

Finally, counsel raises a Pa.R.Crim.P. 600 issue. Prior to trial, defense counsel brought to the court's attention Antonetti-Curet's belief that his speedy trial rights had been violated, and requested a continuance to, among other things, allow him to file a Rule 600 motion.[6] **See** N.T. Trial, 8/22/24, at 5. Citing the fact that eleven bench warrants had been issued for Antonetti-Curet over the three years since charges were filed, the trial court suggested that a Rule 600 motion would be meritless. **Id.** at 7. The court denied

---

[6] In the trial transcript, defense counsel refers to the speedy trial rule by its former number, Rule 1100. **See** N.T. Trial, 8/22/24, at 7.

Antonetti-Curet's request for a continuance, but offered defense counsel the opportunity to file a Rule 600 motion that afternoon should counsel believe it was appropriate. ***See id.*** Counsel, believing there was only 5½ months of non-excludable time attributable to the Commonwealth, did not file a Rule 600 motion. ***See Anders*** Brief, at 7-8; N.T. Trial, 8/22/24, at 5.

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." ***See*** Pa.R.A.P. 302(a). Because Antonetti-Curet did not file a Rule 600 motion in the trial court, he has waived the issue for appellate review.[7]

As the issues raised in counsel's ***Anders*** brief are without merit and our own independent review of the record has revealed no additional, non-frivolous issues overlooked by counsel, we affirm Antonetti-Curet's judgment of sentence. ***See Flowers***, ***supra***.

---

[7] Any claim that trial counsel may have been ineffective for failing to file a Rule 600 motion may be raised in a timely petition pursuant the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, once Antonetti-Curet's judgment of sentence becomes final.

Judgment of sentence affirmed.  Petition to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/31/2025</u>